757 So.2d 316 (2000)
Elsie WOLF, Appellant,
v.
The STANLEY WORKS, A Connecticut Corporation a/k/a Stanley Access Technology, Appellee.
No. 1999-CA-00221-COA.
Court of Appeals of Mississippi.
March 28, 2000.
*317 Mark W. Davis, Gulfport, Attorney for Appellant.
Robert C. Galloway, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. This is a products liability action brought by Elsie Wolf against The Stanley Works. Mrs. Wolf alleges that automatic doors manufactured and installed by Stanley malfunctioned and caused her injury. Stanley's motion for summary judgment was granted because, among other grounds, the trial court found that a substantial change had occurred to the product since its installation, thereby terminating Stanley's responsibility as manufacturer. Mrs. Wolf appeals and alleges that a dispute of material fact existed. We disagree, find no error, and affirm.

*318 FACTS
¶ 2. Joseph and Elsie Wolf (who was seventy-four at the time) were registered guests at the Best Western Seaway motel in Gulfport on May 6, 1997. That morning they entered the motel through its double, sliding-glass, automatic doors to go to breakfast. The exterior set of doors opened normally, then so did the interior set. However, as Mrs. Wolf proceeded on the right side of her husband across the threshold of the interior doors, the right door closed prematurely. The door hit Mrs. Wolf, knocked her down, and caused injuries to her leg. The incident was witnessed by three other people.
¶ 3. The two sets of doors move in a vertical plane to the right and left from the center of the doorway as a person approaches. Each set of doors is operated by three electronic devices: (1) Two microwave motion detectors are located on either side of the doors. They pick up signals from persons or objects approaching the doors from several feet away and send a signal to the doors's motor to cause the doors to open. Stanley calls its motion detectors "StanRay." (2) A threshold presence sensor covers the area in the threshold of each door and immediately outside the threshold on both sides, in an ellipse. Its infrared range overlaps that covered by the motion detector by eight to ten inches, and it sends a signal to the motor to keep the door open as long as a person or object is within the area covered by the presence sensor. It is located in the top of the door frame directly above the threshold. Stanley's proprietary name for this sensor is "StanGuard." (3) An electronic control box receives signals from the motion detector and threshold presence sensor and sends its own signal to the motor to open the door and hold it open for as long as a person or object is within their range and for 1.5 seconds afterward.
¶ 4. Stanley manufactured the doors and their original component parts, and also installed them at the Best Western Seaway Inn in March 1988. Over a period of time, the various parts of the door system require adjustment to make sure the infrared rays sent out by the motion detectors and the presence sensor are sent into the proper areas and that these areas overlap. In addition, various parts wear out over time and have to be replaced. After Stanley installed the doors in March 1988, it had no further responsibility for inspection, service or repair of the doors. Stanley provided the motel with a Daily Safety Check sheet and recommended that the motel personnel check the doors each day for proper operation.
¶ 5. In early January 1996, eight years after Stanley installed the doors, motel personnel noticed that the doors were not operating properly. They contacted Dor-O-Matic of the Gulf States, a Mobile, Alabama company in no way affiliated with Stanley, to service the doors. Dor-O-Matic is in the business of selling and servicing automatic doors but is not an authorized Stanley dealer. When Dor-O-Matic's representative inspected the doors, he found that the controller needed replacing and that something was wrong with the threshold presence sensor. On January 10, 1996, Dor-O-Matic's service representative replaced the threshold presence sensor with a used StanGuard unit that had been rebuilt by Addison Automatics, Inc., a corporation independent of Stanley. There were no reported incidents of the doors operating improperly until Mrs. Wolf's accident on May 6, 1996. Following this incident, however, one or more of the motel's employees were able to make the doors malfunction intentionally.
¶ 6. The day after the Wolf injury, a Dor-O-Matic technician inspected the doors and found all of the electronic devices to be out of adjustment. He properly adjusted them, tested the system and left it in good working order. Until summary judgment was rendered in this case, no more incidents of the doors closing on any person were reported.
¶ 7. Mrs. Wolf filed claims against the motel and Dor-O-Matic for negligence. *319 The suit against those defendants was resolved without the need for appellate review. Mrs. Wolf also brought suit against Stanley for products liability, negligence and gross negligence in the design, manufacture, assembly, sale, marketing, testing, and installation of the automatic doors. The circuit court granted Stanley's motion for summary judgment. Mrs. Wolf appeals this judgment in Stanley's favor but does not pursue the claim for breach of express or implied warranty.

DISCUSSION
¶ 8. Summary judgment cannot substitute for a trial to resolve disputes of material fact, but neither should a trial on undisputed material facts substitute for a summary judgment. M.R.C.P. 56. Based on the controlling legal principles for this action, we must examine the evidence presented on the motion and determine whether any dispute material to those principles exists.

Products Liability Law in Mississippi
¶ 9. Our starting point is the statute that gives structure to a products liability claim in Mississippi:
(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
(i)1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
2. The product was defective because it failed to contain adequate warnings or instructions, or
3. The product was designed in a defective manner, or
4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
Miss.Code Ann. § 11-1-63 (Supp.1999).
¶ 10. A plaintiff has the burden of showing that the defect that allegedly was the proximate cause of injury existed at the time that the product left the hands of the manufacturer, and that the defect rendered the product unreasonably dangerous. Accordingly, the proof must support that no material change in that product occurred after leaving the manufacturer's control. That concept existed but was phrased differently under the authorities that predate the new act. In the precedent that established strict products liability in Mississippi, the supreme court adopted this test:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

State Stove Manufacturing Co. v. Hodges, 189 So.2d 113, 118 (Miss.1966) (quoting RESTATEMENT OF TORTS (Second) § 402A) (emphasis added). The statute has largely displaced that analysis. Still, whether the product had to reach the consumer "without substantial change in the condition in which it was sold" or must now be defective "at the time the product left the control of the manufacturer or seller," the concept is that the manufacturer is responsible *320 for the product that it made, not for the product that exists after subsequent changes.
¶ 11. When the plaintiff alleges a defective design, it must be shown by a preponderance of evidence that at the time the product left the control of the manufacturer:
(i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.
Miss.Code Ann. § 11-1-63(f). Therefore Mrs. Wolf had to demonstrate that a dispute of material fact existed that at the time the product left Stanley's hands, there was a feasible alternative design available that would have prevented the harm without impairing the usefulness of the product.
¶ 12. The broad brush painting of the issues that appeared in the complaint against Stanley was that the doors were defective and unreasonably dangerous; that there was negligence in manufacture, assembly, sale, marketing, testing, or installation; that there was a failure to warn of dangers and to provide instructions for safe use; and that there was a breach of express or implied warranties. The detail that was required by the summary judgment procedure demonstrated that Stanley's alleged liability was predicated on defective design and failure to warn.

Issue I: Lack of Substantial Change in the Product
¶ 13. To summarize a legal principle that we have already discussed, we repeat that before a manufacturer can be found liable for a defect in the product, it must be shown that the defect existed "at the time the product left the control of the manufacturer." Miss.Code Ann. § 11-1-63(a). In January 1996, motel personnel noticed that the doors were not operating properly and called Dor-O-Matic, which sent a technician to work on the doors. He replaced the threshold sensor with a sensor that had been rebuilt from an original Stanley threshold sensor allegedly identical to the one that came with the doors. Because this sensor was rebuilt by Addison Automatics, Inc., without Stanley's knowledge or approval, and neither Dor-O-Matic nor Addison was in any way affiliated with Stanley, the trial court found that this constituted a substantial change in the product.
¶ 14. Mrs. Wolf argues that even though the new sensor was not an original Stanley product, it was "in every function and aspect, substantially the same as a threshold sensor originally produced by Stanley." Even if we accept that Mrs. Wolf presented evidence that the rebuilt product was supposed to have conformed to an original Stanley sensor, its possible deviation during the rebuilding process from Stanley's design was not addressed. There was an admission that the suspect sensor was never removed and examined on behalf of the plaintiff or anyone else.
¶ 15. Under this statute Stanley's liability is as a manufacturer and seller only of its own products. The word "manufacturer" is not defined in the statute but is under the Model Act from which the statute was drawn. It is someone who "prepares" a product for its sale, including rebuilders and remanufacturers. See Phillip L. McIntosh, Tort Reform in Mississippi: An Appraisal of the New Law of Products Liability, Part I, 16 MISS. C.L. REV. 393, 410-11 & 416-18 (1996). Since the definition section was not adopted it cannot be controlling, but this does give some informed meaning to the concept. *321 In the reverse of what occurred, here, Professor McIntosh suggests that a component part manufacturer or rebuilder could be liable for its own part, while the subsequent final assembler could be liable as well. Id. at 413 n. 180. The liability of each would depend on that party's knowledge of a dangerous condition and of a reasonable design alternative. Id. The evidentiary obligation for the plaintiff in the present case, though, is to create a fact dispute of a design defect in the sensor and not just prove that an accident occurred. Miss.Code Ann. § 11-1-63(a)(i) 3. Unless supporting evidence is in the record, we need not decide if Stanley could be liable for a design defect when the sensor that failed was installed years after the door system was assembled by Stanley and was a component part rebuilt by someone else allegedly to the same specifications.
¶ 16. The sensor is of critical significance to Mrs. Wolf's claims. In light of the proof of the manner in which these doors operated, the only possible explanations consistent with Mrs. Wolf's claims were that the threshold presence sensor did not work properly or that the sensor and the motion detector on the side of the door did not operate together as they were designed to do. There was no effort to show a specific defect in the design of the sensor, but reliance was placed solely on the evidence that the door shut prematurely. Thus based on the evidence before the court, no identification was made of the defect in the design. We will discuss below the proof that was offered of other injuries allegedly caused by such doors and of older alternative designs.
¶ 17. What the overall evidence suggests is that the cause of the accident was that the sensors needed to be adjusted. An adjustment was immediately made and no further malfunctions occurred up through the time of the evidence presented on summary judgment. However, regardless of other possible explanations for the accident, it was the plaintiffs burden to present some evidence to create a dispute of material fact that a design defect proximately led to the injury.
¶ 18. The precedents that we find are applying products liability principles that predate passage of the Mississippi Products Liability Act in 1993. In one case, the plaintiff was injured ten years after the purchase of a Ford tractor when an optional safety switch mechanism failed to prevent the tractor from being started while in gear. Ford Motor Co. v. Broadway, 374 So.2d 207, 208 (Miss.1979). The court also noted the long use of the tractor without incident: "We could almost take judicial notice that all things mechanical (in fact all things human) eventually wear out." Id. at 211.
¶ 19. Before passage of the Act that we are reviewing, the supreme court adopted the risk-utility test for determining whether a product contains a design defect. Sperry-New Holland v. Prestage, 617 So.2d 248, 256 (Miss.1993). This test requires balancing the utility of the product against the risk it creates. That test has probably been replaced by the statutory command that there is no liability unless the product "failed to perform as expected." Miss.Code Ann. § 11-1-63(f)(ii). Whose expectations are relevant is problematic under this standard. See Phillip L. McIntosh, Tort Reform in Mississippi: An Appraisal of the New Law of Products Liability, Part II, 17 MISS. C.L. REV. 277, 284-292 (1997). The only reasonable conclusion based on the evidence presented in this case is that the performance of doors such as this is dependent in part on periodic adjustments. Whether we focus on the expectations of the reasonably informed owner of the property or instead on those of a motel guest who is unconcerned about such things but just wants a safe entry to enjoy her breakfast, it is still impossible to conclude, based on the evidence before us of the manner in which these doors operate, that a reasonable person of any description would expect that a door with electric sensors would never *322 need adjustments. Such adjustments were made in the past to this door.
¶ 20. Finally, Mrs. Wolf's evidence of other owners' problems with this kind of door system as opposed to her proof of problems with an older mat system (which ironically she argues was the preferred design alternative), all arose from events that occurred after these doors were installed at the Best Western Seaway. Therefore, she did not show Stanley had any knowledge of any defect before it installed these doors. In addition, that evidence did not prove a design defect but may also have been nothing more than a failure of a building owner to maintain and service the doors.
¶ 21. At most Mrs. Wolf presented evidence that the sensor may have malfunctioned. She did not show what design problem as opposed to other equally possible and equally speculative explanations caused the malfunction. Accepting Mrs. Wolf's claims, the sensor rebuilt by a different company had to be involved in the causation. Stanley was not responsible for that product, nor was the failure to adjust the sensor periodically discredited as a cause. Mrs. Wolf produced no evidence from which a reasonable jury could conclude that the accident was caused by a defect that existed at the time the system was sold by Stanley.

Issue II: Feasible Alternative Design
¶ 22. In order for a manufacturer to be found liable for a design defect, the Mississippi Products Liability Act requires the plaintiff to show that there existed a feasible design alternative that "would have to a reasonable probability prevented the harm" and that it "knew, or in the light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought." Miss.Code Ann. § 11-1-63(f) (Supp.1999). We have already held that there was no dispute of material fact to support a design defect, which makes moot the alternative design issue. We address it as an independent basis to support the judgment that was entered below.
¶ 23. Mrs. Wolf argued that a feasible alternative design existed at the time the Stanley door system was manufactured and installed. This design was a mat system that was a first-generation automatic door system from the 1950's. However, her own expert witness testified that the mats had a short life expectancy, were likely to fail and result in accidents, and were very costly. These characteristics impair the "utility, usefulness, practicality or desirability of the product to users or consumers." Miss.Code Ann. § 11-1-63(f). Absent evidence that the new design proved even more unreliable, it cannot be argued that the older design alternative that was abandoned in part because of the frequency of accidents that it caused would by a "reasonable probability" have prevented the same kind of accident here. See McIntosh, Products Liability, Part II, at 301-302. The only evidence indicates that the mat system was the less efficient system that Stanley had replaced with the type of system used at the Best Western Seaway motel.
¶ 24. Summary judgment was proper on this issue.

III. Inadequate Warnings
¶ 25. An independent basis for products liability is that adequate warnings or instructions were missing. Miss. Code Ann. § 11-1-63(a)(i)(2). Evidence introduced below showed that at least one warning sticker was posted next to the sliding glass doors, reading "Automatic sliding doorCAUTION. Do not stop in doorway, door may close without warning." Mrs. Wolf argues that this warning was insufficient in that it failed to indicate other methods by which a user could avoid the hazard posed by the doors, such as not walking slowly through the door opening. However, both of the Wolfs testified that they did not read the existing warning. Each denied slowing down in the doorway. Their evidence was that while they walked *323 through the doorway at a normal pace, the right interior door closed prematurely. Since walking in an abnormally slow fashion through the doorway was not shown to have been a contributing factor to the accident, there was no evidence that the desired warning would have had any causative impact. See Wyeth Laboratories, Inc. v. Fortenberry, 530 So.2d 688, 691 (Miss.1988) (finding that absent any proof that the warning a patient argues should have been included in a flu vaccine package insert would have caused the doctor not to administer the drug, the warning was irrelevant to liability).
¶ 26. Likewise, Mrs. Wolf has shown no connection between the warning that she argues should have been present and the events that led to the accident.

IV. Punitive Damages
¶ 27. Once it was properly concluded that Stanley had no responsibility for Mrs. Wolf's injuries, there was no basis to require Stanley to pay any damages to her, either compensatory or punitive.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, OF SUMMARY JUDGMENT AND DISMISSAL WITH PREJUDICE OF COMPLAINT AS TO THE STANLEY WORKS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.