935 So.2d 1074 (2006)
Malcolm Gerald GLENN, Administrator of the Estate of Brittany Glenn, Deceased, and Malcolm Gerald Glenn, Appellant
v.
OVERHEAD DOOR CORPORATION and Peter J. Maloney, Inc., Appellees.
No. 2004-CA-01248-COA.
Court of Appeals of Mississippi.
January 17, 2006.
Rehearing Denied May 23, 2006.
*1077 John David Weddle, Tupelo, J. Mark Shelton, attorneys for appellant.
William C. Murphree, Tupelo, attorney for appellees.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Jolie Glenn placed her three-year-old daughter, Brittany, in a car with the engine running while it was parked in her garage with the garage door closed. Brittany died of carbon monoxide poisoning. Malcolm Glenn, Brittany's father and Jolie's ex-husband, sued Overhead Door, the manufacturer of an electronic garage door opener, and Peter Maloney, the seller and installer of the garage door opener. The Lee County Circuit Court granted summary judgment in favor of Overhead Door and Maloney. Malcolm appeals, raising the following issues:
I. WHETHER A FACTUAL ISSUE EXISTS REGARDING THE MOTHER'S ABILITY TO AVOID DANGER
II. WHETHER THE AFFIDAVIT FROM DR. BADEN CREATES A GENUINE ISSUE OF MATERIAL FACT
III. WHETHER OVERHEAD DOOR'S FAILURE TO WARN OF CARBON MONOXIDE POISONING CREATES A QUESTION OF MATERIAL FACT
IV. WHETHER A CONSUMER EXPECTATIONS TEST OR RISK-UTILITY TEST APPLIES
V. WHETHER THE TESTIMONY OF DR. RICHARD FORBES CREATES A QUESTION OF MATERIAL FACT
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Overhead Door Corporation designs and manufactures electronic garage door openers. Their garage door opener was installed in the residence of Jolie Glenn, a resident of Tupelo, Mississippi. On September 22, 1998, Jolie Glenn entertained guests in that home. After her guests had departed, Jerry Montgomery, one of the guests, returned and said that he had left his cell phone at Jolie's house. Jolie testified that she felt uncomfortable with Montgomery's presence. In an effort to get Montgomery to leave without creating a confrontation, Jolie said that she had to leave. Jolie took her three-year-old *1078 daughter, Brittany, and went to the garage, where she had parked her car. Jolie placed Brittany in the child's car seat and started the car. Montgomery told Jolie that he would leave, told her to go back into the house, and told her that he would get Brittany from the car and bring her into the house.
¶ 4. Jolie went back into the house, sat down, and fell asleep. When she awoke, she realized that Brittany was not with her. Jolie went into the garage and saw that the car had stopped running and that the garage door was closed. Brittany was in the car and died as a result of carbon monoxide poisoning.
¶ 5. Malcolm Glenn, Jolie's ex-husband and Brittany's father, sued Overhead Door and Peter Maloney, the seller and installer of the garage door opener, under theories of strict liability and negligence alleging design defect and failure to warn. Malcolm asserted that Overhead Door was negligent in not designing a door opener that would cause the door's motor to engage and the door to rise if the level of carbon monoxide reached a potentially dangerous level. Malcom claims that garage door opener technology exists that would enable Overhead Door to incorporate a sensor into the motor of the product. Malcolm asserted that such a sensor would have detected a dangerous level of carbon monoxide and would have activated the motor to raise the door.
¶ 6. Overhead Door moved for summary judgment, arguing that Malcolm could not meet his burden of production on the issues of causation in fact, defective design, and failure to warn. The circuit court entered summary judgment in favor of Overhead Door and Maloney.

ANALYSIS
¶ 7. The trial court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The movant and non-movant maintain the burdens of production paralleling the burdens of proof they would bear at trial. Collier v. Trustmark Nat'l Bank, 678 So.2d 693, 696 (Miss.1996). The party seeking summary judgment has the burden of persuading the trial judge that there are no genuine issues of material fact, and that based upon the facts, he or she is entitled to summary judgment. Id. Malcolm contends that there are genuine issues of fact as to whether Brittany would have died of carbon monoxide poisoning if the garage door had been raised; whether Overhead Door and Maloney breached a duty to warn of carbon monoxide poisoning; and whether the garage door was designed in a way as to render the door unreasonably dangerous.

I. WHETHER A FACTUAL ISSUE EXISTS REGARDING THE MOTHER'S ABILITY TO AVOID DANGER
¶ 8. Malcolm concedes that a manufacturer does not have a duty to create a childproof garage door. However, a manufacturer does have a duty to provide a product that is reasonably safe without defeating its utility. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage, 617 So.2d 248, 256 (Miss.1993). In balancing the utility of the product against the risk it creates, an ordinary person's ability to avoid the danger by exercising care is also weighed. Id.
¶ 9. In Williams v. Briggs Co., 62 F.3d 703, 707 (5th Cir.1995), an eleven-month-old child died as a result of the burns she sustained when her mother left her unattended in a bath tub with extremely *1079 hot water. The Fifth Circuit applied a risk-utility analysis and noted: "Obviously, Williams' 11-month [old] daughter was incapable of exercising care for her own safety. But, it goes without saying that manufacturers cannot make an absolutely safe product, especially for 11-month old children." Id. The Fifth Circuit affirmed the district court's entry for judgment as a matter of law in favor of the defendant, because the mother could have avoided placing her child in extremely hot water. Id. Similarly, Jolie could have easily avoided exposing Brittany to dangerous levels of carbon monoxide by not leaving her in a car unattended for an extended period of time with the engine running and the garage door down. We find this assignment of error to be without merit.

II. WHETHER THE AFFIDAVIT FROM DR. BADEN CREATES A GENUINE ISSUE OF MATERIAL FACT
¶ 10. Overhead Door and Maloney attached to their motion for summary judgment a report that Dr. Steven Hayne, a forensic pathologist, prepared. Overhead Door and Maloney designated Dr. Hayne as an expert witness. In preparation for this report, Dr. Hayne took a model vehicle and conducted testing. He concluded that Brittany would have died of carbon monoxide poisoning even if the garage door had been opened. Stated differently, Dr. Hayne concluded that the absence of a carbon monoxide sensor neither caused nor contributed to Brittany's death.
¶ 11. To rebut Dr. Hayne's testimony, Malcolm submitted a report from Dr. Michael Baden, a forensic pathologist. Dr. Baden's affidavit stated (1) that Dr. Hayne's measurements are not conclusive, (2) that Dr. Hayne's report does not establish to a reasonable degree of medical certainty that Brittany would not have survived and (3):
That to a reasonable degree of medical certainty, Brittany Glenn's death could have been avoided had the garage door been in the open position, assuming the vehicle exhaust was facing the door and assuming the wind direction was not blowing directly into the garage opening, assumptions which I understand to be factually accurate.
The circuit court held that Dr. Baden's affidavit was inadmissible because he did not explain what scientific methodology he used to form his opinions.
¶ 12. In considering a summary judgment motion opposed by expert testimony, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous. Washington v. Armstrong World Industries, Inc., 839 F.2d 1121, 1123 (5th Cir.1988). When faced with a proffer of scientific expert testimony, the trial judge must determine at the outset whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93, 113 S.Ct. 2786.
¶ 13. An expert's opinion is admissible only if it is founded on data. "Talking `off the cuff'  deploying neither data nor analysisis not an acceptable methodology." Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 924 (7th Cir. 2000). Dr. Baden merely offered an opinion, with no explanation of any methodology *1080 he employed in arriving at that opinion. He did not form his opinion based on his own testing or on statistical data gathered by others. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989). The circuit court was within its discretion in refusing to consider Dr. Baden's testimony. We find this assignment of error is without merit.

III. WHETHER OVERHEAD DOOR'S FAILURE TO WARN OF CARBON MONOXIDE POISONING CREATES A QUESTION OF MATERIAL FACT
¶ 14. Proving that a manufacturer did not warn of some potential danger does not, by itself, create an issue of fact. In order to create a triable issue regarding failure to warn, the plaintiff must show that the user was ignorant of the danger warned against. Hagan v. EZ Mfg. Co., 674 F.2d 1047, 1052 (5th Cir. 1982). Manufacturers and distributors have no duty to warn of dangers that are open and obvious or if the hazard associated with the product is common knowledge to the ordinary observer or consumer. See, e.g., Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 95, 140 So.2d 558, 562 (1962).
¶ 15. The Mississippi Supreme Court has stated that knowledge of an open and obvious danger is not a complete bar to recovery. Tharp v. Bunge Corp., 641 So.2d 20, 24 (Miss.1994). The open and obvious defense is now a comparative negligence defense used to compare the negligence of the plaintiff to the negligence of the defendant. Id. at 25. In Vaughn v. Ambrosino, 883 So.2d 1167 (Miss.2004), the supreme court reaffirmed the principle that the open and obvious defense is a comparative negligence defense. However, the court also noted: "[I]t would be strange logic that found it reasonable to allow a plaintiff to pursue a claim against a defendant for failure to warn of an open and obvious danger. One would struggle, indeed, to justify the need to warn a plaintiff of that which was open and obvious.. . . [A] thing warned of is either already known to the plaintiff, or it's not. If it's already known to the plaintiff, then the warning serves no purpose." Id. at 1170-71(¶ 12).
¶ 16. Malcolm argues that there is a genuine issue as to whether Overhead Door and Maloney should have warned of the dangers of carbon monoxide poisoning because Jolie Glenn testified that it never crossed her mind that her daughter could die from carbon monoxide poisoning. However, she did testify that she knew a person should never leave a child unattended in a car with the engine running. She also testified that she knew and appreciated the danger of carbon monoxide poisoning and that she knew the garage door would not open automatically. She needed no other warning. This assignment of error is without merit.

IV. WHETHER A CONSUMER EXPECTATIONS TEST OR RISK-UTILITY TEST APPLIES
¶ 17. To determine whether a product has a defect that makes it unreasonably dangerous, courts employ either a consumer expectations analysis or a risk-utility analysis. Sperry-New Holland, 617 So.2d at 252. Under a consumer expectations analysis, a product with a defect which causes an injury to the plaintiff is unreasonably dangerous if an ordinary consumer fails to appreciate the danger. "In other words, if the plaintiff, applying the knowledge of an ordinary consumer, sees a danger and can appreciate that danger, then he cannot recover for any *1081 injury resulting from that appreciated danger." Id. at 254.
¶ 18. In a risk-utility analysis, a product is unreasonably dangerous if a reasonable person would conclude that the danger of the product outweighs its utility. "Thus, even if a plaintiff appreciates the danger of a product he can still recover for any injury resulting from that danger provided that the utility of the product is outweighed by the danger that the product creates." Id.
¶ 19. In Sperry-New Holland, the Mississippi Supreme Court held that Mississippi has moved away from the consumer expectations test and has moved towards the risk-utility test. Id. at 256. In 1993, the Mississippi legislature enacted the Mississippi Products Liability Act. Miss. Code Ann. § 11-1-63-65 (Supp.2005). Mississippi Code Annotated Section 11-1-63(f) (Supp.2005) provides:
In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller.
(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.
¶ 20. In Wolf v. Stanley Works, 757 So.2d 316, 321(¶ 19) (Miss.Ct.App.2000), this Court stated:
Before passage of [the Mississippi Products Liability Act], the supreme court adopted the risk-utility test for determining whether a product contains a design defect. Sperry-New Holland v. Prestage, 617 So.2d 248, 256 (Miss.1993). This test requires balancing the utility of the product against the risk it creates. That test has probably been replaced by the statutory command that there is no liability unless the product "failed to perform as expected." Miss.Code Ann. § 11-1-63(f)(ii). Whose expectations are relevant is problematic under this standard.
The Mississippi Supreme Court later concluded that the Products Liability Act requires the manufacturer's product to pass both the risk-utility and the consumer expectations tests. Smith v. Mack Trucks, Inc., 819 So.2d 1258, 1266(¶ 25) (Miss. 2002).
¶ 21. In support of their motion for summary judgment, Overhead Door and Maloney attached an affidavit of Louis Gillombardo, manager of technical field services of GMI Holdings, a subsidiary of Overhead Door. Gillombardo stated that Overhead Door never marketed the garage door opener as a safety device to alert a user to the danger of carbon monoxide poisoning, and never intimated that the door would open automatically if carbon monoxide emissions reached a certain level. Furthermore, he stated that no manufacturer of a garage door opener incorporates a carbon monoxide detector that would automatically cause the garage door to raise when carbon monoxide reaches a certain level.
¶ 22. Jolie makes it clear in her deposition that she knew the danger of carbon monoxide poisoning from an automobile's engine. Likewise, she stated that she knew that the garage door would not open until someone activated the device. Thus, Malcolm failed to show that the device failed to function as expected under the expectations of the consumer.
*1082 ¶ 23. Under a risk-utility analysis, Malcolm has failed to show a cause of action. The Sperry court held that a consumer has responsibility for his own actions. It stated, "In balancing the utility of the product against the risk it creates, an ordinary person's ability to avoid the danger by exercising reasonable care is also weighed." Sperry-New Holland, 617 So.2d at 256. Jolie could have easily prevented Brittany's death by removing her from a running vehicle.
¶ 24. In Cooper v. General Motors Corp., 702 So.2d 428 (Miss.1997), the plaintiff sued General Motors because it failed to install airbags in the vehicle in which the decedent rode. The Cooper court stated that Prestage does not reject the consumer expectations test where no consumer could expect to be protected by an additional safety device that he obviously knew was not there. Id. at 443(¶ 46). The court pointed out that when the Coopers bought their vehicle, they knew that it had no airbags. "Certainly, they cannot expect an airbag to pop out knowing it did not exist." Id. at 443(¶ 45). Similarly, no reasonable person could expect that a garage door opener with no carbon monoxide detector would raise the door when the carbon monoxide reached a toxic level.
¶ 25. Under a consumer expectations analysis, Malcolm cannot prevail because Jolie appreciated the danger at hand. Under a risk-utility analysis, Malcolm cannot prevail because Brittany's death could have been avoided by a simple exercise of reasonable care. Therefore, this assignment of error is without merit. Therefore, this assignment of error is without merit.

V. WHETHER THE TESTIMONY OF DR. RICHARD FORBES CREATES A QUESTION OF MATERIAL FACT
¶ 26. Dr. Richard Forbes, a retired mechanical engineering professor, testified that it was feasible for Overhead Door to incorporate a carbon monoxide sensor into a garage door opener. Dr. Forbes further testified that Overhead Door could, therefore, produce a device that would automatically open the garage door when the carbon monoxide level reached a dangerous level.
¶ 27. In the late 1970s, Dr. Forbes worked on a project at Mississippi State University. He designed a system that first detected levels of carbon monoxide in the garage and then sent an electric signal to the garage door that would trigger the doors to open and at the same time activate fans. Dr. Forbes offered the above described system as an alternative design and demonstrated the actual mechanism during his deposition. He did admit, however, that the device was a prototype.
¶ 28. In an action alleging that a product is defective because of a design defect, the claimant must show that the product failed to function as expected, and that the alternative design would not impair the utility, usefulness, practicality, or desirability of the product to users or consumers. Miss.Code Ann. § 11-1-63(f)(ii) (Supp.2005). Dr. Forbes does not give an opinion as to whether his alternative design would impair the utility, usefulness, practicality, or desirability of the garage door opener. In addition, the evidence showed that Jolie's garage door opener functioned exactly as it was supposed to functionit would raise and lower the garage door only when someone activated the device.
¶ 29. A product's design is not defective simply because the manufacturer could have made it safer. Cooper, 702 So.2d at 443(¶ 45). "Our law demands that products be reasonably fit, not perfectly *1083 so." Hall v. Mississippi Chemical Express, Inc., 528 So.2d 796, 800 (Miss.1988). When considering technology and alternative designs, the focus is on the present design. "It is one thing to show that the defendant might have designed a safer product; quite another to show that the product he did design was unreasonably dangerous." Weakley v. Fischbach & Moore, Inc., 515 F.2d 1260, 1267 (5th Cir. 1975).
¶ 30. Overhead Door designed its garage door opener to raise and lower the door when someone physically activated the device. Overhead Door did not design its garage door openers to detect levels of carbon monoxide, and it did not design the garage door opener to open unless someone manually operated it. Thus, we find no merit to this assignment of error.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ. IRVING, GRIFFIS AND ISHEE, JJ., CONCUR. BARNES AND ROBERTS, JJ., NOT PARTICIPATING.