BARNES, J.,
 

 for the Court.
 

 SUMMARY OF CASE AND FACTS
 

 ¶ 1. This appeal stems from an incident which occurred on January 17, 2000, at Central Pipe Supply, Inc., in Pearl, Mississippi. Mike Townsend, an employee of Central Pipe, was operating a sit-down, gasoline-powered Daewoo GS25S forklift truck. While carrying a load, Townsend bumped into a handcart on the loading dock with the forklift. The handcart began to roll toward the edge of the loading dock. Afraid that the moving handcart might cause damage or injury, Townsend stopped the forklift, put the shift lever in neutral, and quickly exited the forklift in order to halt the handcart’s progress. Townsend did not set the forklift’s parking brake when he left the forklift, nor did he lower the load on the forklift.
 
 [1]
 
 After stopping the handcart, Townsend noticed that the forklift had begun to move down the dock under its own power, and he attempted to stop it. Townsend positioned himself alongside the forklift and reached for the gear shift, but before he could stop the forklift, one of the wheels went off the loading dock. The forklift struck Townsend in the head and knocked him to the concrete below, landing on top of him and severely injuring his leg.
 

 ¶ 2. Townsend filed a complaint on September 19, 2001, against Daewoo Heavy Industries America, Corporation (Doosan), the manufacturer of the forklift, and Burke Handling Systems, Incorporated, the retailer who sold the forklift to Central Pipe.
 
 [2]
 
 The complaint alleged that the defendants were liable for damages, including punitive damages, due to (1) the defective design of the forklift; (2) the failure to include adequate warnings/instructions; (3) negligence; and (4) a breach of the express and implied warranties.
 
 [3]
 
 A motion to stay proceedings was filed on October 23, 2001, by Burke pursuant to Mississippi Code Annotated section 83-23-135 (Rev.1999). Burke filed the motion to stay because its liability insurer, Reliance Insurance Company, was experiencing financial difficulties and was placed into liquidation on October 3, 2001. Burke’s motion was granted by the trial court, which stayed the proceedings for six months from the date of insolvency.
 
 [4]
 

 ¶ 3. On August 30, 2006, Doosan filed a motion for summary judgment and a motion to exclude the plaintiffs expert and/or strike the plaintiffs expert, Thomas Berry.
 
 [5]
 
 The trial judge granted Doosan’s mo
 
 *153
 
 tion and excluded the testimony of Berry under Rule 702 of the Mississippi Rules of Evidence,
 
 Daubert. v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and
 
 Mississippi Transportation Commission v. McLemore,
 
 863 So.2d 31 (Miss.2003), holding that Berry was “unqualified to render an opinion on the subject issues.” On or about February 28, 2007, the trial court entered a Rule 54(b) final judgment dismissing the complaint against Doosan with prejudice.
 
 See
 
 M.R.C.P. 54(b). Townsend now appeals submitting that the trial court’s order granting Doosan’s motion to exclude the plaintiffs expert and granting summary judgment should be reversed and remanded. Finding no error in the exclusion of Townsend’s expert witness testimony, we affirm the trial court’s grant of Doosan’s motion for summary judgment.
 

 I. Whether the trial court erred in granting Doosan’s motion for summary judgment.
 

 ¶ 4. Doosan submitted a motion to exclude the testimony of Townsend’s expert witness, Berry, along with its motion for summary judgment. The trial court granted this motion based on its determination that Berry’s methodology failed to meet the evidentiary requirements of Rule 702 of the Mississippi Rules of Evidence,
 
 Daubert,
 
 and
 
 McLemore.
 
 The trial court also stated that Berry’s opinion testimony was based on nothing more than “speculation and conjecture.” Based on the exclusion of Berry’s testimony, the trial court found that the Doosan’s motion for summary judgment was warranted. Townsend claims that the trial court committed reversible error in excluding Berry’s testimony; therefore, summary judgment was improperly granted.
 

 ¶ 5. “When reviewing a trial court’s grant of summary judgment, our standard of review is de novo.”
 
 Webb v. Braswell,
 
 930 So.2d 387, 395(¶ 12) (Miss.2006) (citations omitted). “Summary judgment is appropriate when the evidence is considered in the light most favorable to the nonmov-ing party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.”
 
 Hubbard v. Wansley,
 
 954 So.2d 951, 956(¶ 9) (Miss.2007) (citing M.R.C.P. 56(c)). “If any triable issues of material fact exist, the trial court’s decision to grant summary judgment will be reversed.”
 
 Harmon v. Regions
 
 Bank, 961 So.2d 693, 697(¶ 10) (Miss.2007). As the motion for summary judgment was granted based solely on the exclusion of the expert testimony of Berry, we must first review the trial court’s grant of Doosan’s motion to exclude Berry in order to determine whether summary judgment was warranted.
 

 II. Whether Berry’s testimony was properly excluded under Rule 702 of the Mississippi Rules of Evidence and the
 
 Daubert
 
 standard.
 

 ¶ 6. In
 
 McLemore,
 
 the supreme court adopted the standard of analysis introduced in
 
 Daubert
 
 and the 2003 amendment to Rule 702, “for assessing the reliability and admissibility of expert testimony.”
 
 McLemore,
 
 863 So.2d at 39(¶ 23). The amended Rule 702 of the Mississippi Rules of Evidence states:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may
 
 *154
 
 testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has' applied the principles and methods reliably to the facts of the case.
 

 Thus, under Rule 702 and
 
 Daubert,
 
 “the trial judge is to act as a gatekeeper, ensuring that expert testimony is both relevant and reliable.”
 
 Poole ex rel. Poole v. Avara,
 
 908 So.2d 716, 723(¶ 15) (Miss.2005) (citing
 
 Kumho Tire Co. v. Carmichael,
 
 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
 

 ¶ 7. Townsend argues that based on Berry’s extensive qualifications, background, experience, and training, the trial court should have denied Doosan’s motion to exclude Berry’s testimony. “When reviewing a trial court’s decision to allow or disallow evidence, including expert testimony, we apply an abuse of discretion standard.”
 
 Canadian Nat’l/Ill. Cent. R.R. v. Hall,
 
 953 So.2d 1084, 1094(¶ 29) (Miss. 2007) (citing
 
 Webb,
 
 930 So.2d at 396-97(¶ 15)). “Absent an abuse of discretion, a judge’s determination as to the qualifications of an expert witness will remain undisturbed on appeal.”
 
 Hubbard,
 
 954 So.2d at 956(¶ 11) (citation omitted). While we recognize that Berry is a licensed professional engineer with over twenty-four years of experience in his field, the trial court’s exclusion of Berry’s testimony was based on the methodology Berry used in obtaining his results, not based on his ré-sumé.
 

 ¶ 8. A party who offers expert testimony has to show that the expert’s opinion is not based “on opinions or speculation, but rather on scientific methods and procedures.”
 
 Webb,
 
 930 So.2d at 397(¶ 16) (citing
 
 McLemore,
 
 863 So.2d at 36(¶ 11)). Two important considerations that determine “whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested ... [and] whether the theory or technique has been subjected to peer review and publication.”
 
 DaubeR,
 
 509 U.S. at 593, 113 S.Ct. 2786. The United States Supreme Court has also stated that the language of Rule 702 of the Federal Rules of Evidence “makes no relevant distinction between ‘scientific’ knowledge and ‘technical’ or ‘other specialized’ knowledge.”
 
 Kumho Tire Co.,
 
 526 U.S. at 147, 119 S.Ct. 1167. However, this Court will only find an expert’s opinion admissible when it is founded on data.
 
 Glenn v. Overhead Door Corp.,
 
 935 So.2d 1074, 1079(¶ 13) (Miss.Ct.App.2006). “Talking ‘off the cuff — deploying neither data nor analysis — is not an acceptable methodology.”
 
 Id.
 
 (quoting
 
 Lang v. Kohl’s Food Stores, Inc.,
 
 217 F.3d 919, 924 (7th Cir. 2000)).
 

 ¶ 9. In his report, Berry concluded that the forklift was defectively designed because “[t]he F-N-R shift lever does not lock in neutral and can easily be bumped into engagement.” However, there was no evidence presented to show that Townsend actually bumped the gear shift when he exited the vehicle.
 
 [6]
 
 In his deposition,
 
 *155
 
 Townsend stated: “I am unaware of me doing that [hitting the gear shift lever]. I don’t feel like I did.” It was also noted in Berry’s testimony that another employee had engaged the forklift by bumping the gear shift on a previous occasion; however, no injury occurred. In order to accomplish this hypothetical scenario, Berry performed what Townsend has termed “real life testing” to determine whether an individual could exit the forklift and inadvertently bump the gear-shift the mechanism from the “neutral” position into the “forward” position with his body. Specifically, Berry used what have been termed the “hip bump” and “finger flick” tests to attempt to create this hypothetical situation. The “finger flick” test, which was recorded on video, showed Berry attempting to use his finger to lightly “flick” the gear shift to see if it would slip into “forward” gear. The “hip bump” test was not recorded. Berry was only able to successfully “hip bump” the gear shift into forward once. In fact, the record reflects that Berry only attempted to do this a couple of times. We also note that Berry performed these tests himself, rather than using someone of Townsend’s similar height, weight, and build.
 

 ¶ 10. “[T]he test for expert testimony is not whether it is fact or opinion ... [but] whether it requires scientific, technical, or other specialized knowledge beyond that of the randomly selected adult.”
 
 Palmer v. Volkswagen of Am., Inc.,
 
 904 So.2d 1077, 1092(¶64) (Miss.2005) (internal quotations omitted). “If so, the testimony is expert in nature, and must be treated in discovery, and at trial, as such.”
 
 Id.
 
 “[Wjhether ... specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert’s testimony often will rest ‘upon an experience confessedly foreign in kind to [the jury’s] own.’ ”
 
 Kumho Tire Co.,
 
 526 U.S. at 149, 119 S.Ct. 1167 (quoting Hand,
 
 Historical and Practical Considerations Regarding Expert Testimony,
 
 15 Harv. L.Rev. 40, 54 (1901)). In
 
 Kumho,
 
 the Supreme Court said that an expert’s testimony was properly excluded as there was doubt about the reliability of his theory, nor were there “refer[ences] to articles or papers that validate [his] approach.”
 
 Id.
 
 at 157, 119 S.Ct. 1167.
 

 ¶ 11. Townsend argues that Doosan’s expert witness, R. Kevin Smith, performed a test similar to another test Berry used in order to determine the amount of pressure required to move the gear — shift the mechanism from “neutral” to “forward.” Berry, and Smith, used an instrument to demonstrate how many pounds of pressure it would take to move the gear lever. Both Berry and Smith concluded it took anywhere from 2-5 pounds of pressure to move the lever. These tests were the only minimally quantitative tests performed in this case. However, neither expert gave testimony as to how these tests relate to any industry standard, nor did these tests present the trial court with any information as to any design defect. As in
 
 Glenn,
 
 the product in this case functioned as intended. In fact, Central Pipe continued to use the forklift after the accident, and it was still in service when Berry made his inspection approximately one year later.
 

 ¶ 12. We agree with Doosan’s assertion that these methods employed by Berry were “result-oriented tests.” Berry concluded that the only way the accident could have occurred was that Townsend must have bumped the gear lever into the “forward” position upon exiting the forklift. Therefore, his testing was limited to that
 
 *156
 
 theory. In addition, Townsend admits that Berry could not point to any literature where this “real-life testing” methodology has been employed. Berry did not conduct any personal interviews, nor did he prepare his own fact sheet regarding the incident. Much of the information contained in his report was gathered by Se-vart, the original expert witness hired by Townsend.
 

 ¶ 13. Townsend argues that the guidelines set forth in
 
 Daubert
 
 “are not to be applied rigidly but rather constitute general guidelines.” While we recognize that the Supreme Court has stated that the
 
 Daubert
 
 analysis is flexible, our sole focus must be on the “principles and methodology, not on the conclusions that they generate.”
 
 Daubert,
 
 509 U.S. at 595, 113 S.Ct. 2786. Townsend admitted that Berry’s conclusion was that, “more likely than not,” Townsend inadvertently bumped the gear into the “forward” position when he exited the vehicle. We agree with the trial court that Berry’s findings are speculative and that his methodology failed to meet either the relevancy or reliability standards outlined in
 
 Daubert.
 
 Again, while we do not dispute that Berry was a qualified, highly-educated engineer, our issue here is that his methods failed to reflect such specialized training.
 

 ¶ 14. Accordingly, we find that the trial court did not abuse its discretion in excluding the testimony of Townsend’s expert witness; therefore, summary judgment was properly granted.
 

 III. Whether Townsend’s state law claims are preempted by federal law.
 

 ¶ 15. In the alternative to its motion for summary judgment, Doosan also argued that Townsend’s claims are preempted by federal law. The trial court failed to address the issue of federal preemption since it granted Doosan’s motion for summary judgment. We too find this issue moot.
 

 CONCLUSION
 

 ¶ 16. We find no error in the trial court’s exclusion of Townsend’s expert witness; therefore, the motion for summary judgment was properly granted. Additionally, as Issue I is case-dispositive, the remaining issue is rendered moot.
 

 ¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . We also note that Townsend was not wearing a seat belt.
 

 [2]
 

 . Although the complaint identified the defendant as Daewoo Heavy Industries America, Corporation, the official corporate name was Doosan Infracore America Corporation, f/k/a Daewoo Heavy Industries America Corporation (sometimes referred to as "DHIA”). For clarity, we will hereafter refer to the appellee as Doosan.
 

 [3]
 

 . Townsend later dropped his claim of failure to warn/inadequate warnings admitting that his expert, Thomas Berry, testified that ade-quale or better warnings would not have prevented the injury.
 

 [4]
 

 . Although various motions and responsive pleadings were filed by Burke throughout the course of the litigation, ultimately Townsend and Burke agreed it would be appropriate to dismiss Burke as a separate defendant from the action, and the trial court entered an order dismissing Burke on March 12, 2007.
 

 [5]
 

 . Originally, J.B. Sevart, a consulting engineer, was Townsend’s expert witness. However, due to health issues, Sevart was replaced by Berry. Townsend submitted his
 
 *153
 
 supplemental designation of expert witness for Berry to the trial court on October 10, 2005.
 

 [6]
 

 . Based on die information provided in the record, Townsend clearly failed to follow the safety procedures outlined in the instruction manual for the subject forklift. The instruction manual states on page 41 that there is a danger that if the forklift is left running without an operator, it can move slowly if the transmission is engaged. It also instructs operators to "[ajlways place the transmission control lever in the NEUTRAL (center) position
 
 and apply the parking brake before dismounting the lift truck."
 
 (Emphasis added). The manual admonishes operators to "[njever leave the lift truck with the engine operating, or with the parking brake disengaged.” Townsend admitted that he had never re
 
 *155
 
 viewed the operator’s manual prior to operating the subject forklift.