GULF, M. & N. R. Co. *v.* BRADLEY.

(Division B.   June 13, 1932.)

[142 So. 493.   No. 30084.]

**W. S. Welch** and **Ellis B. Cooper,** both of Laurel, for appellant.

Currie & Currie, of Hattiesburg, and Jesse M. Byrd, of Leakesville, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee sued appellant for a personal injury and recovered judgment. He alleged that while he was attempting to board a passenger coach of appellant, at the time and place designated therefor by appellant, and when the relation of carrier and passenger existed, the train was prematurely and suddenly started with a jerk of such force as to throw him from the steps of the coach and under the wheels, which passed over and injured his hand. Appellee testified in support of every material allegation of his declaration, and in every particular except one he was corroborated by two eyewitnesses. In short, the verdict is well supported by the evidence.

For the defense, the testimony strongly supports appellant on two issues, first, that there was no sudden or premature starting of the train and no lunge or jerk in the starting, and, second, that there was no injury of appellee or any other person at the point where passengers were being received and where appellee claims he was injured. And there is testimony which strongly tends to show that appellee was on the other side of the vestibuled train from the place where passengers were being

received, and there was evidence of admissions made by appellee immediately after the accident that he was injured by his running to catch the train after it had started, and admissions furthermore that he had no money, which is material in view of the fact that there was no ticket office at that station for that train, and passengers were required, as a consequence, to be prepared to pay and to pay cash fares. The state of the record is such, therefore, that, if the verdict had been for defendant, it would have been well supported by the evidence.

In such a state of case the record must be reasonably free of materially erroneous instructions in favor of the appellee, unless same are cured by other instructions. In the haste of trial, an erroneous and materially harmful instruction was given for appellee and was not cured or corrected by any other instruction. The offending instruction is in the following language: "The court instructs the jury for the plaintiff, that if you believe from the evidence in the case that the defendant stopped its train at Lucedale on the occasion in question to take on passengers; but if you further believe from the evidence that the defendant had no schedule showing the time said train would stand and wait for passengers to embark; then under the law it was the duty of the defendant before starting its said train to see that all passengers in the act of boarding said train had sufficient time to get onto said train before moving the same; and if you believe from the evidence that the plaintiff, on the occasion in question, had gotten upon the steps for the purpose of boarding said train at a time when said train was standing for the purpose of taking on passengers, that he was a passenger, and if you further believe from the evidence that the defendant moved said train while the plaintiff was so boarding same and as a proximate result thereof he was thrown or caused to fall from said train and was injured then under the law the defendant was guilty of negligence, and the plaintiff is entitled to re-

cover, and under such state of case, it is your sworn duty to find a verdict for the plaintiff.''

It will be at once observed that this instruction told the jury that, if on the occasion in question the plaintiff had gotten upon the steps for the purpose of boarding said train at a time when the train was standing for the purpose of taking on passengers, then he was a passenger. This instruction omits the two necessary elements that the person who claims the protection of a passenger must board the train at the place then and there provided by the carrier for the acceptance of passengers, and at the particular place where the agents of the carrier are accustomed to be for that purpose; and that the person so boarding must be doing so in good faith actually intending to become a passenger, intending to pay his fare, and being prepared so to do. These two elements were in issue and in dispute in this case; there being evidence to support the contention of appellant on both of them. They could not be bridged over by an instruction which omitted them in defining a passenger and in declaring appellee to be a passenger without regard to those two elements, as was the effect of the said instruction.

Persons often board passenger trains while the trains are standing to receive passengers, but for purposes which do not bring them within the class entitled to the rights of passengers. They board the train to converse with a friend, or to deliver a message, or to purchase a newspaper. But under the language of the above-quoted instruction such persons would be passengers. Persons often board standing passenger trains surreptitiously intending to ride without paying fare. These are not passengers. 10 C. J., p. 620.

''Where one sues for damages for injuries received as a passenger, as, for instance, where he alleges that he was injured by the negligence of the defendant when he was boarding one of the defendant's cars as a passenger, while the car was standing at a regular stopping place for the reception of passengers, the burden is on him to

prove that he was a passenger; and an instruction defining a passenger as 'one who is boarding a car, or who is attempting to board a car, for the purpose of being carried on the cars from one point to another,' is erroneous, as is also a statement therein that 'he becomes a passenger when, with the intention of boarding a train he attempts to board for the purpose of riding.' . . . The relation of carrier and passenger is dependent upon the existence of a contract of carriage, express or implied, between carrier and passenger, made by themselves or their respective agents; and this relation begins when a person puts himself in the care of the carrier or directly within its control with the bona-fide intention of becoming a passenger and is accepted as such by the carrier.'' 5 Elliott on Railroads (3 Ed.), sec. 2389. The intention bona-fide to become a passenger, and acceptance by the carrier, may be shown by the attendant circumstances, and by the implications arising therefrom, but these circumstances must be such as to justly warrant the implications (Id.), and, if the facts in this respect are in dispute, it is improper to take these facts from the jury by an instruction which omits or disregards them as material elements.

Reversed and remanded.