# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00652-SCT

*EVELYN ANDERSON*

*v.*

*B. H. ACQUISITION, INC., AND TREASURE BAY CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/11/1999 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM HARVEY BARTON |
| | SKIP EDWARD LYNCH |
| ATTORNEYS FOR APPELLEES: | JAMES O. DUKES |
| | DAVID C. GOFF |
| | KIMBERLY DAWN SAUCIER ROSETTI |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED IN PART - 11/22/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/13/2000 |

**BEFORE BANKS, P.J., MILLS AND COBB, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Evelyn Anderson filed suit in the Circuit Court of Harrison County, Second Judicial District, against B.H. Acquisition, Inc., and Treasure Bay Corporation for the personal injuries she suffered when she slipped and fell on the concrete driveway immediately in front of the Broadwater Hotel while walking toward a Treasure Bay shuttle bus. Anderson based her personal injury claim against B.H. Acquisition on premises liability and her claim against Treasure Bay Corporation on common carrier liability. The trial court granted directed verdicts in favor of both B.H. Acquisition and Treasure Bay Corporation. We agree with the trial court's decision as to Treasure Bay but reverse and remand in regard to B.H. Acquisition. We also reverse and render the circuit court's award of attorney's fees to Treasure Bay.

## STATEMENT OF THE FACTS

¶2. On December 30, 1995, Evelyn Anderson and her husband, Carvel Anderson, checked-in as guests at

the Broadwater East Hotel (B.H. Acquisitions, Inc.) in Biloxi, Mississippi. The next morning, the Andersons and their friends, the Johnstons, decided to take the shuttle bus to Treasure Bay Casino for breakfast. Upon request, the hotel staff called Treasure Bay, and a shuttle was dispatched.

¶3. The weather on that particular morning was misty and foggy. Both couples waited in the lobby of the hotel until the shuttle arrived. When the shuttle arrived, the shuttle driver parked underneath the canopy on the far left side and opened the shuttle doors for the passengers to board. As the group exited the hotel lobby to board the shuttle, Anderson was first in line, followed by her husband, then Mrs. Johnston and finally Mr. Johnston. About 5 feet past the curb, Anderson fell and broke her right leg. As Carvel Anderson tried to aid his wife, he noticed what "looked like - little beads of oil - of water on the oil" on the driveway where she fell. A security guard at the hotel helped place Anderson in a wheelchair and called for an ambulance. The paramedics arrived and transported Anderson to a local hospital where she underwent surgery for her broken leg. Anderson was kept in the hospital for several days and has since required extensive medical treatment.

¶4. On March 3, 1999, the case was tried in the Circuit Court of Harrison County, Second Judicial District, wherein the trial court granted directed verdicts for both B.H. Acquisition and Treasure Bay Corporation at the end of Anderson's case-in-chief. Aggrieved by the judgment of the trial court, Anderson timely perfects this appeal.

## STANDARD OF REVIEW

¶5. "On review of a decision for a directed verdict, the Supreme Court must consider the evidence in the same light as the trial court." *Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 172 (Miss. 1995). "Thus, this Court must review the circuit court's decision de novo." *Id.* When a party moves for a directed verdict, the trial court must look, "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury." *Biloxi Reg'l Med. Ctr. v. David*, 555 So. 2d 53, 57 (Miss. 1989). However, "when a motion for directed verdict is made and granted at the close of the plaintiff's case-in-chief, such is proper if the plaintiff's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party." *Fulton*, 664 So. 2d at 172.

## DISCUSSION

### I.

### WHETHER THE CIRCUIT COURT ERRED IN GRANTING B. H. ACQUISITION A DIRECTED VERDICT WITH REGARD TO THE ISSUE OF PREMISES LIABILITY.

¶6. Anderson alleges that the trial court erred by granting B.H. Acquisition's motion for a directed verdict. Specifically, she asserts that B.H. Acquisition had "prior and/or constructive knowledge" of the oil on the driveway and had a duty to warn her of any dangerous conditions which it knew or reasonably should have known were present. B.H. Acquisition, however, maintains that it did not have actual or constructive knowledge of the dangerous condition and that the directed verdict was proper. We find that the directed verdict was improper and that the jury should have been presented with these issues.

¶7. "In Mississippi, an owner, occupant, or person in charge of a premises owes to an invitee or business visitor a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the

invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care." *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283, 285 (Miss. 1986). "When the dangerous condition is traceable to the proprietor's own negligence, no knowledge of its existence need by shown." *Id.* "However, the owner or occupant is not an insurer against all injuries." *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996). "Where the presence of the dangerous condition is due to the act of a third party, it must be shown that the defendant had actual or constructive knowledge of its presence." *Waller*, 492 So. 2d at 285.

¶8. Simply put, in order for a plaintiff to recover in a slip-and-fall case, he must (1) show that some negligent act of the defendant caused his injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition. *Downs v. Choo*, 656 So. 2d 84, 86 (Miss. 1995); *see also Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992).

¶9. Anderson's attempts at the first two theories of recovery are weak. The only evidence Anderson presented concerning a possible negligent act of B.H. Acquisition was the testimony of her husband who said he thought there was oil on the driveway where she landed. She produced no testimony or proof that B.H. Acquisition or its employees were responsible for the oily condition of the pavement. Anderson also failed to show that B.H. Acquisition had actual knowledge that oil was on the driveway the day the accident occurred. The record contains no evidence that the employees or anyone associated with B.H. Acquisition had actual knowledge of oil on the driveway on the day at issue.

¶10. The third possibility-the imputation of constructive knowledge upon B.H. Acquisition-is Anderson's most promising theory of recovery. "Constructive knowledge is present where, based on the length of time that the condition existed, the operator exercising reasonable care should have known of its presence." *Drennan*, 672 So. 2d at 1170. The Andersons and Johnstons testified that they waited in the hotel lobby approximately thirty minutes before the shuttle arrived. They further testified that they saw no cars stop or pass through the covered entrance to the hotel during the period they were in the lobby. On cross-examination, however, all four admitted that they did not continually watch the door and could not positively state that absolutely no other cars were present on that particular morning.

¶11. Scott Gray, director of security for B.H. Acquisition at the time of the incident, testified that there *were* cars parked underneath the canopy when he arrived at the accident scene and that it would be unusual for no cars to pass through or be present under the canopy at 9:00 a.m. in the morning. Gray further described the process by which the hotel would alleviate any spilled oil on the pavement surface and testified that he had previously seen "discolorations" on the pavement but could not state that he had ever seen anything identified as oil. Gray admitted it was the duty of the bell hops and desk clerk to maintain the area in which Anderson fell. However, Gray also testified that the bell hops have other duties elsewhere in the hotel other than under the canopy and that neither the bell hops nor the desk clerk could see the areas where Anderson fell from their respective stations or stands. Julie Tiblier, the driver of the shuttle bus, testified that she did not recall seeing any kind of debris or other foreign material that would have presented a hazard on the day of the incident and that, if she had seen such a condition, she would not have stopped in that particular location.

¶12. Despite the testimony of Gray and Tiblier, the evidence Anderson has presented, considered in a light

most favorable to her, is such that reasonable jurors could potentially reach a verdict in her favor. Therefore, we find the circuit court erred in granting B.H. Acquisition's motion for directed verdict. The jury should have been allowed to determine whether B.H. Acquisition either created the dangerous condition or had actual or constructive knowledge that the condition existed on the date of the incident. Thus, on this issue we reverse and remand for further proceedings consistent with this opinion.

## II.

## WHETHER THE CIRCUIT COURT ERRED BY GRANTING TREASURE BAY CORPORATION A DIRECTED VERDICT WITH RESPECT TO THE ISSUE OF COMMON CARRIER LIABILITY.

¶13. Anderson asserts that the circuit court erred in granting Treasure Bay Corporation's motion for a directed verdict. Specifically, she contends that a passenger/carrier relationship was established when she formed the "intent" to board the Treasure Bay shuttle. Anderson also asserts that Treasure Bay was negligent in selecting the location for boarding and for failing to warn her of the oily condition on the pavement. Treasure Bay, however, argues that the passenger/carrier relationship had not yet been created and that the circuit court properly granted its motion for directed verdict.

¶14. In granting Treasure Bay's motion for a directed verdict, the circuit judge reasoned as follows:

> there was legal principle or precedent for the fact that a carrier, by its actions, created a hazardous condition by not stopping at a designated place, or where they stopped, if they created a hazardous condition, then they could be held liable. And that was one of the reasons that I did not grant summary judgment to begin with.
>
> In this particular instance, there is no evidence that they created any hazard. If there was a hazard in existence, it was not seen by their driver. They didn't create it by placing any oil, or whatever it was, on the pavement under the portico. As I view the evidence that has been offered here thus far, that - the sign that was posted for a shuttle stop was outside of the canopy and was totally- would be totally exposed to the elements. **The evidence is, by everybody, that is was inclement weather conditions at the time. And to say that the Treasure Bay driver created a greater hazard by driving under the canopy so that passengers would not be exposed to the elements outside when they would have had to walk through the same area to get to the outside is a little far-fetched to me.** I don't see how that created any hazardous condition for loading or unloading. Ms. Tiblier, in my view, pretty well stated it succinctly, that she looked, she did not see anything outside the door. Had she seen something that was a hazardous condition, she would not have remained there. There was nothing wrong - There's been no showing there was anything wrong with the tram itself; that - **None of the parties had reached the tram. I think it goes without saying that they intended to board the tram, but that intention started from well within the hotel itself.**
>
> **Would it be said that Treasure Bay would be liable if they had tripped going out of the door on the doorjamb? No, I certainly can't see that. So without the creation of some hazard by Treasure Bay or there being some defect in the tram itself in a loading process or an unloading process, I do not see how they can be held legally liable.**

(emphasis added). Although the circuit judge made no specific ruling on the existence of a passenger/carrier

relationship, we adopt his reasoning and find that no such relationship existed. Additionally, we find that the circuit court properly granted Treasure Bay's motion for a directed verdict.

¶15. A carrier of passengers for hire, "is required to exercise the highest degree of care and diligence for the safety of its passengers." *Goodwin v. Gulf Transp. Co.*, 453 So. 2d 1035, 1036 (Miss. 1984). "[The carrier] may be held liable for personal injuries only where those have been caused by the carrier's failure to exercise the highest degree of care." *Id.* Furthermore, "the relation of carrier and passenger is dependant upon the existence of a contract of carriage, express or implied, between carrier and passenger, made by themselves or their respective agents; and this relation begins when a person puts himself in the care of the carrier or directly within its control with the bona fide intention of becoming a passenger and is accepted as such by the carrier." *Gulf, M. & N.R. Co. v. Bradley*, 167 Miss. 603, 142 So. 493, 494 (1932).

¶16. In *Mississippi City Lines, Inc. v. Bullock*, 194 Miss. 630, 13 So. 2d 34 (1943), a twelve-year-old boy was a passenger on a city bus. The bus stopped with its front end on the gravel in order to provide the boy with a safe place to stand until the bus moved away. As "the boy alighted, he did not remain until the bus could move away but he proceeded at once, inevitably on the run along the gravel shoulder on the west side of the bus and around its rear and not the pavement and into the path of the woman aforementioned and was hit by the woman's car resulting in injuries to him from which he died the next day." *Bullock*, 13 So. 2d at 36. The boy's family sued both the woman and the bus company and recovered. The bus company appealed. We reversed, holding:

> (a) the injury is the remote and not the proximate consequence of the negligent or unlawful position in which the bus was stopped; (b) the bus driver was under no duty to warn of the danger of approaching vehicles; and (c) when the passenger has alighted at a sound place off and away from the traveled portion of the highway and where the passenger could safely stand and remain, the relation of carrier and passenger is thereby at an end.

*Id.* at 38. Thus, we found that the passenger/carrier relationship ended when the boy left the bus and that the bus did not create the dangerous condition which was the proximate cause of the boy's death. Although *Bullock* deals with the passenger/carrier relationship ending, it is analogous to the present case in which we must determine when, if ever, the passenger/carrier relationship began.

¶17. Thus, the question becomes whether Anderson (1) placed herself within the care or control of the shuttle; (2) with the intent to become a passenger; and (3) was accepted by the shuttle. *See Bradley*, 142 So. at 494. We find, in this particular set of circumstances, that Anderson had not yet placed herself in the care or control of the shuttle. As the trial judge stated, Anderson obviously had an intent to board the shuttle, although the shuttle driver testified that she did not know for certain that Anderson's intent was to board her shuttle at the time she fell. Anderson was not on Treasure Bay's premises when she fell but rather was on B.H. Acquisition's premises. Moreover, Anderson was not physically attempting to board the Treasure Bay shuttle when she slipped and fell on the driveway.

¶18. Anderson further argues that Treasure Bay was negligent in its selection of the place for boarding and for failing to warn her of the dangerous condition. First, Anderson asserts that Treasure Bay was negligent in not stopping at its "assigned location," which was marked by a sign located outside of the canopy. At trial, however, Scott Gray, a representative from B.H. Acquisition, testified that the Treasure Bay shuttle was allowed to pull up under the canopy, outside the canopy, or any place a passenger directed them to park. His testimony was corroborated by Julie Tiblier, the shuttle driver, who said that neither B.H.

Acquisition nor Treasure Bay had ever given her any guidance as to where she should park and that she always picked passengers up at various locations on the premises. As the trial judge stated, "it was inclement whether conditions at the time and to say that the Treasure Bay driver created a greater hazard by driving under the canopy so that passengers would not be exposed to the elements outside when they would have had to walk through the same area to get outside is a little bit far fetched to me." The shuttle driver pulled underneath the canopy to keep the passengers from boarding and walking in the rain. Clearly, such a decision was not negligent. Moreover, the "assigned spot" is also directly across from the hotel door and Anderson, in all likelihood, would have still taken the same path to the shuttle if it had been parked in its "assigned spot." See diagram below:

**Hotel Entrance/Exit**

---

**Anderson fell here**

---

**Shuttle parked here (underneath canopy)**

---

**"Assigned Spot" (not underneath canopy)**

Second, Anderson argues that Treasure Bay was negligent by not warning her of the dangerous condition. The shuttle driver testified that she did not recall seeing any oil or grease on the pavement on the day of the accident. Furthermore, she testified that she would not have stopped in that location if she had seen a dangerous condition.

¶19. We find that no passenger/carrier relationship had been established under this particular set of circumstances. Anderson, at the time of her fall, had not placed herself within the care or control of the carrier. Likewise, we find that Treasure Bay was not negligent in failing to warn Anderson of a dangerous condition or for parking underneath cover during inclement weather. Therefore, we find that the circuit court correctly granted Treasure Bay Corporation's motion for directed verdict.

### III.

### WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES PURSUANT TO MISS. CODE ANN. §  11-55-5.

¶20. Anderson asserts that the circuit court erred by awarding attorney's fees pursuant to Miss. Code Ann. § 11-55-5 (Supp. 2000), which provides in relevant part as follows:

> Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, **finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment**, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure...

Miss. Code Ann. § 11-55-5(1) (Supp. 2000) (emphasis added). We agree and find the circuit court improperly awarded attorney's fees to Treasure Bay.

¶21. No Mississippi case exists where a carrier has been sued by an "alleged passenger" who was not on the carrier's premises and where the carrier did not create the dangerous condition, was unaware of the dangerous condition, and had no physical contact with the "alleged passenger" when she was injured. In *Scruggs v. Saterfiel*, 693 So. 2d 924, 927 (Miss. 1997), we stated "[t]o deem a question of law 'frivolous, groundless in fact or law or vexatious' merely because there is not existing Mississippi law on the subject would have a chilling effect on all litigation of first impression."

¶22. Mississippi law does address what is required of the passenger/carrier relationship, stating that, "the relation of carrier and passenger is dependant upon the existence of a contract of carriage, express or implied, between carrier and passenger, made by themselves or their respective agents; and this relation begins when a person puts himself in the care of the carrier or directly within its control with the bona fide intention of becoming a passenger and is accepted as such by the carrier." *Bradley*, 142 So. at 494. We find that Anderson has failed to show, under the present law, that she was within the care or control of Treasure Bay when she fell. We refuse, however, to say that her claim is frivolous. Further, we recognize that it may be possible to be in the care and control of a carrier where the passenger has "yet to touch" the carrier. (For instance, a school bus driver who stops and yells out the window to a child that it is clear for him or her to cross the road and the child is hit has undertaken care or control of the child. However, this simply was not the situation in the present case.)

¶23. A claim is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." *Scruggs*, 693 So. 2d at 927. "Though a case be weak or 'light-headed,' that is not sufficient to label it frivolous."*Id.* Although Anderson's claim has proven to be unsuccessful, we cannot say that the claim was frivolous or that Anderson had no hope of success. Considering the absence of Mississippi law on point with this case, Anderson had substantial justification to assert her claim. Therefore, we find the circuit court erred in awarding attorney's fees to Treasure Bay.

## CONCLUSION

¶24. We find that the Circuit Court of Harrison County erred by granting a directed verdict in favor of B.H. Acquisition and, therefore, reverse and remand for further proceedings consistent with this opinion. We find that the circuit court did not err in granting a directed verdict in favor of Treasure Bay Corporation and, thus, affirm as to this issue only. Finally, we find that the circuit court erred by awarding attorney's fees to Treasure Bay pursuant to Miss. Code Ann. § 11-55-5 (Supp. 2000); therefore, we reverse and render that award.

¶25. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED IN PART.**

> **PITTMAN AND BANKS, P.JJ., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PRATHER, C.J., AND DIAZ, J., NOT PARTICIPATING.**

> **McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26. I concur with the reversal of the trial court's judgment as to hotel owner, B.H. Acquisition, Inc., and in reversing the award of attorney fees for suing the bus owner, Treasure Bay Corporation. However, I do not agree with the majority in affirming the trial court's decision in regard to Treasure Bay, as a jury should decide if it was negligent. This Court should not determine as a matter of law that a jury question was not established, i.e., that Evelyn Anderson was not under the control of the Treasure Bay shuttle bus when she had left the building to board the bus, was in line to board the bus, and was only two to five feet from the bus when she broke her leg. The Treasure Bay bus had stopped and opened its doors to allow the plaintiff and others to embark, which they were doing when Anderson was injured.

¶27. To board a bus, there must exist a common area, which is where the bus stops to allow the passengers to embark and alight. We have held that one in control of such common areas is responsible for dangerous conditions located thereon, regardless of ownership. *Wilson v. Allday*, 487 So.2d 793, 797-98 (Miss. 1986). In *Wilson*, the proprietor of a grocery store leased space in a shopping mall and shared parking space with the other occupants. Wilson was injured when she tripped over a hole in the parking lot. Even though the lease required the owner to repair such hazards, we held that the store owner was concurrently liable because its use was tantamount to control over the premises. Likewise, the Treasure Bay shuttle made regular use of the parking/common area at the Broadwater Hotel in order to ferry customers to its place of business.

¶28. Treasure Bay was regularly on the hotel premises for the purpose of procuring customers, and as a common carrier owed its passengers the highest degree of care, that of the most prudent person. Therefore, a jury question exists as to whether the bus driver exercised the highest duty of care in checking the common area to make sure that it was safe for the passengers to embark.

¶29. Furthermore, the majority adopts the reasoning of the trial court, which held that no passenger/carrier relationship existed: "None of the parties had reached the tram. I think it goes without saying that they intended to board the tram, but that intention started from well within the hotel itself." However, in so stating, the trial court and the majority ignored our cases regarding the creation of a passenger/carrier relationship. The majority acknowledges as much when it cites *Gulf, M. & N.R. Co. v. Bradley*, 167 Miss. 603, 142 So. 493, 494 (1932), for the following proposition: "[T]his relationship begins when a person puts himself in the care of the carrier or **directly within its control with the bona fide intention of becoming a passenger and is accepted as such by the carrier**." (emphasis added).

¶30. Therefore, a jury question existed here as to whether Anderson was under the control of the bus at the time of her accident. In *Bradley*, we went on to hold that "if the facts in this respect are in dispute, it is improper to take these facts from the jury by an instruction which omits or disregards them as material elements."*Id*. This reasoning also applies to a directed verdict, which likewise takes these facts from the jury.

¶31. Reasonable jurors could find that Anderson was in the control of the bus when she had left the building to board the bus, was in line to board the bus on the pavement where the bus stops, and the bus was stopped a few feet away with the intention of allowing her to board. One need not actually touch a vehicle to be legally considered a passenger or occupant of the vehicle.

¶32. In *Stevens v. United States Fid. & Guar. Co.*, 345 So.2d 1041 (Miss. 1977), we held that a towtruck driver was "using" the wrecker while sweeping debris from the highway. In that case, the plaintiff secured a disabled vehicle to his towtruck and then proceeded to sweep debris of the wreckage from the

highway. He completed this task and was returning to the wrecker when he was struck by another vehicle.

¶33. The insurance company denied his claim on the theory that he was not "using" the wrecker at the time of the accident, as required by terms of the policy, because he was approximately six to eight feet away from the vehicle when he was struck. *Id.* at 1042. We disagreed, holding that "[r]emoving debris from the highway was a necessary part of the operation, and could only be accomplished by Stevens removing himself from the wrecker to perform this task." *Id.* at 1044.

¶34. Twelve years later, we held that passengers were "occupying" a parked vehicle while standing on the side of the road. In *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So.2d 879, 881 (Miss. 1989), the plaintiffs had exited a bus to search for a restroom and were standing on the shoulder of the road when another vehicle ran into the bus, injuring two and killing one. The insurer of the bus denied their claims because they were standing approximately four feet from the bus at the time of the accident, and were therefore not "occupying" the vehicle as required by the policy. *Id.* We disagreed.

¶35. There is enough evidence to allow a jury to determine whether Anderson was a passenger, i.e., under the control of the bus at the time of her accident, and whether the bus controlled the area where it was stopped. Under *Wilson,* a bus operator has a duty to ensure that it is a safe environment to enter or exit the vehicle in a common area. I would reverse and remand to the trial court for a jury decision as to both defendants. Accordingly, I concur with the majority in part, and dissent in part.