# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00276-COA

**PETE WALKER**                                                          **APPELLANT**

**v.**

**CELLULAR SOUTH INC. D/B/A C SPIRE**                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/27/2018 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | EDWARD D. LAMAR FRANK J. DANTONE JR. |
| ATTORNEYS FOR APPELLEE: | SHELDON G. ALSTON ROBERT LANE BOBO |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/23/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1. Pete Walker brought a premises liability action against Cellular South Inc. in the Bolivar County Circuit Court seeking damages for injuries he allegedly suffered when he fell as he was attempting to sit in a tall (bar-height) chair at the C Spire store. After discovery, Cellular South moved to exclude the opinions of Walker's safety expert as irrelevant and improper under Rule 702 of the Mississippi Rules of Evidence and moved for summary judgment, claiming that Walker failed to raise any disputed issues of material, genuine fact in support of his premises liability claim. Walker moved for sanctions against Cellular South, alleging spoliation of evidence because Cellular South did not retain the store

surveillance videotape from the day of Walker's fall. The circuit court granted Cellular South's motion to exclude Walker's liability expert and granted summary judgment in Cellular South's favor. In the same order, the circuit court denied Walker's motion for sanctions. Walker appeals. For the reasons addressed below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     The record reflects that on June 4, 2014, Walker, who was seventy-one at the time, went to Cellular South's C Spire store in Cleveland, Mississippi, to have his cell phone's voicemail fixed. According to Walker's complaint and his deposition testimony, when it was his turn at the counter to meet with a Cellular South representative, he tried to sit on a tall (bar-height) chair when it suddenly slipped from underneath him, causing him to fall to the floor. Walker alleges that he was injured as a result of the fall.

¶3.     Cellular South employee Steadman Hunter completed an incident report later that day and reviewed the store surveillance videotape as part of providing a description of the accident for the report. In describing the fall, Hunter indicated in the report that "[w]hile in the chair, [Walker] had the chair tilted forward the entire time leading up to the fall at 5:18 p.m. The fall happened quickly and he made a loud sound as he fell slightly to the floor." Hunter reported that at 5:20 p.m. Walker got back up on his feet with the help of a customer and a Cellular South representative, Zach Stallings. Stallings then took Walker's phone-bill payment and fixed his voicemail issues. According to the incident report, Walker was asked several times if he needed medical assistance, and he declined; so Stallings called

2

Walker's daughter, Lara, and she came and got her father. When she got there, she said that Walker was "known for having sudden seizures and blacking out." The incident report reflects that Lara then "collected business cards from the representatives that witnessed the accident. She said this [was] only to get a list of names of witnesses to see how severe the accident was that took place today." The record reflects that after three weeks, the video cameras at the C Spire store record over themselves.

¶4. Approximately two months after the incident, a medical bill for Walker, dated July 23, 2014, was delivered to the Cleveland, Mississippi C Spire store. In a letter dated January 22, 2015, Walker's counsel notified Cellular South that Walker had retained the Dantone P.A. law firm with respect to the June 4, 2014 incident and in that letter counsel requested "a copy of any incident reports, written or taped statements regarding the incident, photographs and the surveillance videotape of the incident." The record also includes correspondence dated March 13, 2015, from the claims specialist for Cellular South's insurer informing Walker's counsel that there was "no video surveillance nor taped statements to provide."

¶5. On July 19, 2016, Walker filed his complaint, claiming as follows:

> [Cellular South] breached its duty when it allowed customers and invitees to sit in chairs with legs that did not properly grip the floors when customers and invitees attempted to sit in them. [Cellular South] breached its duty when it failed to remedy said dangerous condition by failing to make the premises safe by removing the chairs with poor grips, installing flooring with more slip resistance and/or failing to warn [Walker] of the known hazardous condition then and there existing on the premises, which was known or should have been known to [Cellular South].

3

¶6.    Walker served discovery, and in Cellular South's supplemental response to Walker's request for any video of the incident, Cellular South informed Walker that the cameras at the C Spire store "record over themselves after three weeks. Cellular South did not know of a claim, and therefore did not retain the videos."

¶7.    In December 2017, Walker filed his expert designation, identifying Russell J. Kendzior as his expert witness and attaching Kendzior's expert report. Kendzior opined that Walker fell because of insufficient traction between the chair legs and the store's Vinyl Composite Tile (VCT) floor. He further opined that Cellular South "failed to provide a safe walking or seating surface which was in direct violation of [The American Society of Testing and Materials (ASTM)] F-1637-13 and [ASTM] D-2047-04." To avoid repetition, we will discuss additional details relating to these opinions below.

¶8.    One month later, Cellular South filed its expert designation, identifying Dan Roig of Packer Engineering Group as its expert and attached Roig's report to its expert designation.

¶9.    In June 2018, after conducting written discovery and taking fact- and expert-witness depositions, Cellular South filed a motion to exclude Kendzior, Walker's expert witness. Cellular South asserted that Kendzior's opinions should be excluded as irrelevant under Mississippi Rule of Evidence 702 because Kendzior was inappropriately attempting to use walking standards as the basis for his opinions, which did not apply to a stool or chair slipping on a floor. Walker opposed Cellular South's motion to exclude Kendzior's opinions, arguing that Kendzior was qualified to offer the opinions given in his report and that these

4

opinions would be helpful to the jury in determining whether a dangerous condition existed within the store.

¶10. In September 2018, Walker filed a motion for sanctions, asserting that Cellular South had engaged in spoliation of evidence because the surveillance videotape from the C Spire store on the day of Walker's fall had not been retained. Walker argued that this conduct warranted an instruction to the jury "that whatever the videotape would have revealed would have been adverse to [Cellular South's] contention that it was not negligent." In response, Cellular South asserted that sanctions were not warranted because it did not intentionally destroy or lose the video surveillance through means of gross negligence. Cellular South further argued that in any event the spoliation issue was irrelevant because Walker could not prove his theory of negligence against Cellular South.

¶11. Cellular South also moved for summary judgment in September 2018, asserting that Walker, as an undisputed business invitee, could not set forth specific, disputed, and material facts that would establish his premises liability claims against Cellular South. In response, Walker asserted that summary judgment was precluded because Kendzior's opinions established that an allegedly dangerous condition existed in the store and that "[b]y failing to put forth any proof that it had tested the floor's coefficient of friction[,] . . . [Cellular South] certainly concedes that it had constructive knowledge, if not actual knowledge[,] of the slipperiness of its floor."

¶12. Cellular South's motion to exclude Kendzior was heard by the circuit court on

October 17, 2018. The court announced at the end of the hearing that it was taking the motion under advisement. A month later, the circuit court heard Cellular South's summary judgment motion and Walker's motion for sanctions.

¶13. On November 27, 2018, the circuit court entered its final judgment excluding Kendzior's opinions, denying Walker's motion for sanctions, and granting Cellular South's summary judgment motion. Walker filed a motion to alter or amend the judgment, which the circuit court denied. Walker appeals.

## DISCUSSION

### I. Exclusion of Walker's Expert, Kendzior

¶14. "The standard of review for the admission or exclusion of evidence, such as expert testimony, is an abuse of discretion." *Inv'r Res. Servs. Inc. v. Cato*, 15 So. 3d 412, 416 (¶2) (Miss. 2009). "[T]he decision of a trial judge will stand unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003); *Townsend v. Doosan Infracore Am. Corp.*, 3 So. 3d 150, 154 (¶7) (Miss. Ct. App. 2009) ("Absent an abuse of discretion, a judge's determination as to the qualifications of an expert witness will remain undisturbed on appeal.").

¶15. The test for the admissibility of expert testimony is set forth in Mississippi Rule of Evidence 702, as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

6

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

M.R.E. 702; *see McLemore*, 863 So. 2d at 35 (¶6).

¶16.   In *McLemore*, 863 So. 2d at 38 (¶16), the Mississippi Supreme Court adopted the "analytical framework" set forth in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), and modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), as the test to be used when determining whether an expert witness's testimony is admissible under Rule 702.  The modified *Daubert* standard "involves a two-prong inquiry . . . : (1) whether the expert opinion is relevant in that it must 'assist the trier of fact' and (2) whether the proffered opinion is reliable." *Thomas v. Lewis*, 289 So. 3d 734, 740 (¶17) (Miss. 2019).

¶17.   Walker asserts that the circuit court abused its discretion in granting Cellular South's motion to exclude Kendzior.  As detailed below, we find no abuse of discretion in the circuit court's decision to do so. Accordingly, we find that this assignment of error is without merit.

¶18.   Walker's expert, Kendzior, opined that Walker fell because "of insufficient traction between the stool's feet and the VCT flooring surface."  Kendzior further opined that "[t]he interaction between the plastic stool foot caps and the polished VCT did not provide an

7

adequate level of slip resistance for the stool to be safely used."

¶19.    Kendzior supported these opinions by taking coefficient-of-friction (COF) test measurements from six locations within the store.  Kendzior determined that in the location where Walker fell, the average dry COF value was 0.43, which is less than the 0.50 dry COF that is the slip-resistant threshold for walking surfaces.  The standards Kendzior used to support these opinions are ASTM F-1637-13 and ASTM D-2047.

¶20.    ASTM F-1637-13 is entitled "Standard Practice for Safe Walking Surfaces."  Section 5.1.4 of this standard requires that "[w]alkway surfaces shall be slip resistant under expected environmental conditions and use."  ASTM D-2047-04 establishes a standard test method for determining the static COF of polish-coated flooring surfaces.  Section 4.1 of this standard specifically provides: "Test Method D 2047 establishes a compliance criterion relating static coefficient of friction measurements of flooring surfaces *with human locomotion safety*."  (Emphasis added).  Section 4.2 provides that "polishes and other floor maintenance coatings having a static coefficient of friction of not less than 0.5, as measured by this test method, have been recognized as providing nonhazardous walkways."

¶21.    In short, the 0.5 slip resistance that Kendzior relies upon is a guideline for *walking*. As these standards plainly provide, ASTM F-1637-13 is a standard for "Safe Walking Surfaces," and ASTM D-2047 establishes measurements "with respect to human locomotion safety."  In his deposition, Kendzior confirmed that these standards setting out the 0.5 COF limit do not mention resistance between a chair's feet and the floor:

8

| | |
|---|---|
| [COUNSEL FOR CELLULAR SOUTH:] | Does it [F-1637-13] talk anywhere in there does it talk about slip resistance of chairs or stools? |
| [KENDZIOR:] | No. |

. . . .

| | |
|---|---|
| [COUNSEL FOR CELLULAR SOUTH:] | Nowhere in the [D-2047] standard does it talk about . . . chairs or stools or the bottom of their . . . [f]eet . . . . |
| [KENDZIOR:] | No. |

Kendzior further admitted, "Well, there's no chair standard . . . ; there's no published nationally recognized consensus standard for measuring the slip resistance of a chair foot."

Similarly, Kendzior testified:

| | |
|---|---|
| COUNSEL FOR CELLULAR SOUTH:] | But the standard, there's not a standard as far as chairs and stools are concerned. |
| [KENDZIOR:] | That's correct . . . . Now, you're right, it's not a standard written for chairs, and I'm not holding it out as one. |

. . . .

| | |
|---|---|
| COUNSEL FOR CELLULAR SOUTH:] | But there's no standard you know of that says what the coefficients should be between those feet and the floor. |
| [KENDZIOR:] | You mean the chair—is there a standard for chair feet and floors? |
| COUNSEL FOR CELLULAR SOUTH:] | Yes. |

9

KENDZIOR:]                No, not to my knowledge.

¶22.    As the circuit court found, the standards Kendzior relied upon were not designed to be used in measuring the slip resistance of a chair sliding across a floor, and there was no evidence that they had been used in this manner before. The circuit court further found "that [Kendzior's] stance in regards to the coefficient of friction between the chair and the floor is part of an untested methodology and would be more confusing to a jury than helpful." Continuing, the circuit court found:

> [Kendzior] himself indicates that there is no standard for chair slip cases and that the standard used is one to test the friction between walking and the contact . . . with the floor[,] not friction between the chair and a floor[.] [T]herefore the standard proposed is one untested in the manner in which the expert is trying to apply [it in this case].

¶23.    We find no abuse of discretion in the circuit court's determination. Kendzior's opinions are simply not based on any standard that measures the friction between the legs of a chair and the floor. Because the very crux of this case is Walker's allegations that the chair slipped—not that Walker, himself, slipped as he was walking—Kendzior's opinions, and the standards he relies upon to reach them, are irrelevant in deciding the facts at issue in the case. For this reason, Kendzior's opinions would not "assist the trier of fact" and were therefore properly excluded. M.R.E. 702; *see Watts v. Radiator Specialty Co.*, 990 So. 2d 143, 147 (¶12) (Miss. 2008) (citing *Daubert*, 509 U.S. at 593) ("Relevance, as defined by our standard for admitting expert testimony, depends upon whether the reasoning or methodology employed by the expert witness may be properly applied to the facts at hand.").

10

¶24. Walker asserts the testing performed by Roig (Cellular South's expert) corroborated Kendzior's testing, and thus Kendzior's opinions were not irrelevant. Walker points out that Roig calculated the static COF of the subject chair moving across the floor (the ratio of the sliding force over the vertical force (gravitational weight)), and determined that it equaled 0.3045, which was less than the .43 COF Kendzior obtained. Walker, however, ignores the rest of Roig's report, in which Roig explained that "[f]ocusing attention on the floor's friction/slip resistance is misleading." As Roig further explained, "[C]hairs are built with everything from rolling casters, with a coefficient of friction close to **zero**, to soft rubber feet, with a coefficient of friction close to **one**. All these chairs are safe if used properly. The 0.5 slip resistance is a guideline for **walking**."[1] Indeed, the idea of having a national standard for the COF for chairs across floor does not make sense because moveable furniture's physical relationship to the floor is different depending on the feet utilized in the specific chair. We find no merit in Walker's assertions on this point.

¶25. Both experts have agreed that there is not a national standard for the COF of chairs in relation to the floor. Because the standards Kendzior relied upon admittedly do not apply to the facts of this case, they are irrelevant to the facts at issue and would not assist the trier of fact, as required under Rule 702. Walker's contention that the circuit court abused its

---

[1] Roig conducted forty-eight tests of the slip resistance of the C Spire store floor "to determine the general safety of this floor as compared to other floors." The average measured slip coefficient was 0.57. Because the slip coefficient was above .50, Roig conclusively found that the COF of the floor was adequate per industry standards *for individuals walking*.

discretion in granting Cellular South's motion to exclude Kendzior's opinions is without merit.

## II. Summary Judgment

¶26. "An appeal from summary judgment is reviewed de novo[,] and we view the evidence in the light most favorable to the non-movant." *Parson v. Go Knightrider LLC*, 282 So. 3d 609, 613 (¶14) (Miss. Ct. App. 2019). Pursuant to Mississippi Rule of Civil Procedure 56, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The non-movant . . . 'carries the burden of producing sufficient evidence of the essential elements of his claim at the summary-judgment stage, just as he would carry the burden of production at trial.'" *Parson*, 282 So. 3d at 613 (¶14) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). If a non-movant fails "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial," *Karpinsky*, 109 So. 3d at 89 (¶11), "[s]ummary judgment is appropriate." *Id.* at 88 (¶10).

¶27. Under Mississippi law, "a three-step process" is used to determine premises liability cases, as follows: "First, we must determine whether the injured party was an invitee, licensee, or a trespasser at the time of the injury. Next, we must determine what duty was owed to the injured party by the business owner/operator. Finally, we must determine

12

whether that duty was breached." *Haggard v. Wal-Mart Stores Inc.*, 75 So. 3d 1120, 1124 (¶9) (Miss. Ct. App. 2011).

¶28. The record reflects that Walker was at the C Spire store to get help in fixing the voicemail on his cell phone. We find that Walker was a business invitee—he entered the store "in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Rod v. Home Depot USA Inc.*, 931 So. 2d 692, 694 (¶10) (Miss. Ct. App. 2006). A business owner or operator owes an invitee the "duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care." *Anderson v. B. H. Acquisition Inc.*, 771 So. 2d 914, 918 (¶7) (Miss. 2000).

¶29. There are three theories under which Walker can prove a breach of the duty owed a business invitee under Mississippi law:

> [Walker] must (1) show that some negligent act of the defendant caused his injury; *or* (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; *or* (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Id.* at (¶8) (emphasis added). If Walker cannot furnish sufficient evidence under at least one of these theories, then his premises liability claim fails as a matter of law. *See Karpinsky*, 109 So. 3d at 89 (¶13); *Bonner v. Imperial Palace of Miss. LLC*, 117 So. 3d 678, 682 (¶13) (Miss. Ct. App. 2013) ("[Because] Bonner had the burden of proof at trial, she must have

13

provided sufficient evidence on one of the above three types of premises liability to withstand a motion for summary judgment.").

¶30. In granting Cellular South's summary judgment motion, the circuit court found that after having excluded Kendzior's opinions regarding the slipperiness of the floor, Walker was left with no evidence of a dangerous condition or that Cellular South had any actual or constructive knowledge of a dangerous condition at the store. The circuit court specifically found that there was no evidence of other incidents similar to Walker's fall / slipping-chair incident at the C Spire store and that there was no evidence or testimony that Cellular South caused the alleged dangerous condition. For the reasons addressed below, we agree.

## A.     Proof of a "Dangerous Condition"

¶31. We begin with the principle that "regardless of the invitee's precise theory of premises liability, proof that [his] injury was caused by a 'dangerous condition' is an essential element of [his] claim." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1104 (¶12) (Miss. Ct. App. 2016); *see also Patterson v. Mi Toro Mexican Inc.*, 270 So. 3d 19, 21 (¶7) (Miss. Ct. App. 2018). "A property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." *Bonner*, 117 So. 3d at 682 (¶12); *see Martin v. Trustmark Corp.*, 292 So. 3d 245, 248 (¶11) (Miss. Ct. App. 2019) ("[A]n invitee's premises liability claim . . . requires proof of a dangerous condition." (citing cases)), *cert. denied*, 290 So. 3d 753 (Miss. 2020). Further, "'[p]roof merely of the occurrence of a fall on a floor within a business is insufficient to show negligence on the part of the proprietor. . . .'" *Jacox v. Circus*

14

*Circus Miss. Inc*., 908 So. 2d 181, 184 (¶7) (Miss. Ct. App. 2005) (quoting *Sears, Roebuck & Co. v. Tisdale*, 185 So. 2d 916, 917 (Miss. 1966)).

¶32.    In this case, Walker sought to establish that an alleged "dangerous condition" existed at the C Spire store through the testimony of his expert, Kendzior.  Kendzior opined that "the cause [of Walker's fall] was that of insufficient traction between the stool's feet and the VCT flooring surface. The interaction between the plastic stool foot caps and the polished VCT did not provide an adequate level of slip resistance for the stool to be safely used."  As addressed above, the circuit court properly excluded these opinions.  Walker alleges that the chair slipped—not that he slipped as he was walking—and thus Kendzior opinions, based upon inapplicable walking standards, are irrelevant to deciding the facts at issue in the case. M.R.E. 702.

¶33.    There is also no evidence that the chair, itself, was defective.  In fact, Kendzior testified that it was not, as follows:

> [T]he overall condition of the chair when I inspected it was good. The chair was not broken.  There was no cracks in the plastic. The legs were firmly mounted. The feet—the plastic or I should say nylon feet that were at the bottom of the chair legs were worn but in good condition, they were not defective.

¶34.    We find that after Kendzior's opinions were properly excluded, Walker was left with no evidence of a dangerous condition.  Walker's premises liability theories fail because he has no proof of a dangerous condition at the C Spire store.  We now turn to address Walker's additional contentions with respect to each of the three premises liability theories.

15

## B. Negligent-Act Premises Liability Theory

¶35. As to the "negligent-act" premises liability theory, other than allegations relating to the slipperiness of the floor as related to the nylon feet of the subject chair (the alleged dangerous condition on the premises), Walker does not assert that Cellular South committed any other act or omission that caused his fall. On the contrary, Walker testified that the store floor was dry and there was no debris in the area that could have caused him to slip and fall:

> [COUNSEL FOR
> CELLULAR SOUTH]:    Was there anything on the ground . . . a substance
>                     on the ground, to your knowledge? . . . .
>
> [WALKER:]           No, sir. I . . . beg pardon. I was—I was thinking.
>                     No, it wasn't nothing. I never saw no debris of no
>                     kind over there on that floor.
>
> [COUNSEL FOR
> CELLULAR SOUTH:]    And it wasn't wet or anything?
>
> [WALKER:]           No, sir.

Walker cannot prove his premises liability claim based on the first "negligent-act" theory of recovery.

## C. Actual-Knowledge Premises Liability Theory

¶36. Under the actual-knowledge premises liability theory, Walker must show that Cellular South had actual knowledge of a "dangerous condition" and failed to warn the plaintiff of that condition. *Haggard*, 75 So. 3d at 1125 (¶11). As addressed above, Walker cannot prove the essential "dangerous condition" element of this theory.

¶37. Walker also asserts, however, that "Cellular South breached the standard of care by

16

acting unreasonably and imprudently . . . by failing to measure the floor's coefficient of friction and . . . the coefficient of friction between the nylon feet of the high chair/stool and [Cellular South's] showroom floor." We find no merit in this argument. Setting aside our determination that Walker is without evidence of a "dangerous condition," Mississippi law also provides that a defendant is not liable for failure to warn of a "harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care." *Jones v. Imperial Palace of Miss. LLC*, 147 So. 3d 318, 321-22 (¶14) (Miss. 2014).

¶38.    Our review of the record reflects that there was no evidence presented of any prior incidents occurring under similar circumstances. All three C Spire employees testified that they had never seen an incident at the store where a chair had slipped causing a customer to fall, and there was no other evidence that such an event had occurred or that there had even been any incident involving a customer slipping on the floor at all. Without evidence of a "dangerous condition," or proof of any similar incidents, "no reasonable jury could conclude the [chair in relation to the flooring] was unreasonably dangerous." *Patterson*, 270 So. 3d at 22 (¶8) (quoting *Vivians v. Baptist Healthplex*, 234 So. 3d 304, 310 (¶23) (Miss. 2017) (Dickinson, P.J., specially concurring)) (affirming summary judgment where plaintiff failed to present evidence of a dangerous condition or proof of similar incidents occurring on the ramp where plaintiff had fallen).

### D.    Constructive-Knowledge Premises Liability Theory

17

¶39. Under the constructive-knowledge premises liability theory, Walker must show that he was injured due to a "dangerous condition" that existed for a long enough period of time that the defendant should have known of its existence. *Haggard*, 75 So. 3d at 1125 (¶11). Without proof of a "dangerous condition," this liability theory likewise fails. *Patterson*, 270 So. 3d at 21 (¶7).

¶40. In sum, after our review of the record, we agree with the circuit court's conclusion that Walker did not offer any proof of a negligent act on Cellular South's part or that it had actual or constructive notice of an alleged dangerous condition on the premises. Indeed, without Kendzior's opinions, which we determined were properly excluded by the circuit court, Walker failed to establish a genuine issue of material fact as to the existence of a dangerous condition on the C Spire store premises. The record is also devoid of any prior similar incidents. Accordingly, we find that the circuit court correctly granted Cellular South's summary judgment motion.

### III. Motion for Sanctions Regarding Recorded-Over Surveillance Videotape

¶41. Walker asserts that the circuit court erred because it did not "sanction Cellular South for failing to . . . retain the videotape of Walker's visit as a business invitee." Walker contends that the circuit court should have sanctioned Cellular South by denying summary judgment in its favor, and granting, pretrial, a negative-inference jury instruction that the recorded-over surveillance videotape contained evidence unfavorable to Cellular South.

¶42. Under Mississippi law, we "employ[] an abuse of discretion standard in reviewing the

18

trial judge's grant or denial of sanctions." *Ill. Cent. Gulf R.R. Co. v. McLain*, 174 So. 3d 1279, 1284 (¶12) (Miss. 2015). Further, "[w]e will affirm a trial court's decision unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Jones v. Jones*, 995 So. 2d 706, 711 (¶13) (Miss. 2008).

¶43. As an initial matter, we find that Walker's request for a pretrial, negative-inference jury instruction regarding the recorded-over videotape was premature. *In Clinton Healthcare LLC v. Atkinson*, No. 2017-IA-00946-SCT, 2019 WL 153906, at *4 (¶16) (Miss. Jan. 10, 2019), the supreme court found that the trial court's pre-trial order that "a spoliation instruction be given at trial before a trial even happens . . . was inappropriate, as the trial court does not know what evidence regarding spoliation will be presented to the jury, and thus cannot know whether the evidence at trial will support the instruction." Likewise, it would have been "inappropriate" for the circuit court to grant the relief Walker sought in his motion for sanctions prior to trial.

¶44. Walker also asserts on appeal that the videotape was an "integral component" of his ability to show that Cellular South failed to provide him a reasonably safe place to sit and that the appropriate sanction for Cellular South's failure to preserve the videotape should have been that the circuit court deny summary judgment and invoke the negative-inference rule at trial. Walker relies on *DeLaughter v. Lawrence County Hospital*, 601 So. 2d 818 (Miss. 1992), and *Thomas v. Isle of Capri Casino*, 781 So. 2d 125 (Miss. 2001), to support

19

his contention. We find that both cases are wholly distinguishable and do not apply in this case.

¶45. *DeLaughter v. Lawrence County Hospital* was a wrongful death action. After the patient's death, the defendant hospital lost her medical record that the hospital was required, by law, to maintain. *DeLaughter*, 601 So. 2d at 821. The supreme court recognized that the patient's hospital record was "an integral component" in plaintiff's malpractice action against the hospital," *id.*, and thus held that the circumstances under which it was lost created a jury question whether the hospital could demonstrate an adequate reason for why the record was unavailable. *Id.* at 821-22. The supreme court held that if the jury found that no adequate reason was offered, and that the hospital "deliberately or negligently brought about by the actions of the hospital, the jury could infer that the missing original medical record contained information unfavorable to the hospital." *Id.*

¶46. In *Isle of Capri*, 781 So. 2d at 126 (¶1), Thomas claimed to have won two multi-million dollar progressive slot machine jackpots, but the casino refused to pay the jackpots. Thomas filed a complaint with the Gaming Commission, then appealed the unfavorable ruling he received. *Id.* at 126-27 (¶¶1-2). After learning that Thomas had appealed the gaming commission's denial of his claim, the casino removed the slot machine at issue and removed a computer central processing unit (CPU) from the machine. *Id.* at 130 (¶¶20-21). The CPU was not tested prior to its removal, and its removal made the CPU inoperable and untestable. *Id.* at (¶22).

20

¶47.    Similar to the *DeLaughter* decision, the supreme court explicitly recognized that "[t]he information contained in the CPU of slot machine 2947 would have conclusively established whether Thomas had in fact won any jackpots on the night in question, and how much time had elapsed since it occurred." *Id.* at 133 (¶36).  The supreme court also found that the casino failed to follow its own policies in handling claims, and also violated specific statutory procedures under the Mississippi Gaming Control Act. *Id.* at 131, 134 (¶¶25-26, 43).  Under these circumstances, the supreme court found that the casino's actions, "if not intentional [were] at least grossly negligent." *Id.* at 133 (¶39).  The supreme court further found that the casino's failure "to follow the dictates of the Gaming Control Act, and [its] . . . failure to preserve the slot machine . . . resulted in a presumption that the evidence contained in the CPU of machine 2947 was unfavorable to those responsible for its destruction." *Id.* at 134 (¶43).

¶48.    In comparison to these cases, we find no abuse of discretion or "clear error" in the circuit court's determination that Cellular South's failure to preserve the videotape did not amount to such "intentional" or "grossly negligent" conduct so as to warrant a negative inference in this case.  Cellular South employee, Hunter, completed an incident report the same day the incident occurred, and reviewed the videotape as part of providing a description of the accident for the report.  Although Cellular South's cameras automatically recorded over the incident three weeks after the incident, doing so was not contrary to statutory law, nor did it occur during pending litigation as in the *Isle of Capri* case.  Indeed, Walker

21

declined medical assistance, several times, after he fell, and Cellular South received no further communication about the incident until two months later when a medical bill for Walker was delivered to the C Spire store.

¶49.    Most significant, however, is that in both *DeLaughter* and *Isle of Capri*, the missing evidence was an "integral component" of the plaintiff's case, *DeLaughter*, 601 So. 2d at 821, or was "conclusive evidence," *Isle of Capri*, 781 So. 2d at 129 (¶17), that would have resolved the plaintiff's case. Although Walker makes the same contention here, we do not agree. Walker asserted before the circuit court, for example, that the recorded-over videotape would have shown how he fell and the circumstances of his fall, and it would have shown other customers in the C Spire store that may have witnessed the incident. But we have found that summary judgment was correctly granted in this case because Walker was unable to present evidence that a dangerous condition existed at the C Spire store once Kendzior's opinions were properly excluded by the circuit court. Nor did Walker have evidence of any similar prior incidents that may have made his fall reasonably foreseeable to Cellular South.

¶50.    In short—in the light of Walker's inability to provide evidence that a dangerous condition existed at the store, or notice to Cellular South—facts pertaining to how Walker fell are not relevant. These facts, which the videotape would have demonstrated, would not create a "genuine issue . . . [of] *material* fact," M.R.C.P. 56(c) (emphasis added), and would do nothing to assist Walker in overcoming summary judgment against him.

¶51.    *Page v. Biloxi Regional Medical Center*, 91 So. 3d 642 (Miss. Ct. App. 2012), is

22

instructive on this issue. In that case, Page was injured when he fell from a chair after it collapsed. *Id.* at 643 (¶4). Immediately after he fell, hospital representatives asked Page if he needed medical attention and he declined. *Id.* The hospital kept the chair at issue in a back room, but during a routine sweep, the chair was inadvertently discarded. *Id.* Over two years later Page brought a premises liability claim against the hospital. *Id.* at 643-44 (¶5). The hospital moved for summary judgment, and at the hearing Page argued that because the chair was discarded, he should receive a negative presumption that the chair was discarded either intentionally or with gross negligence. *Id.* at 644 (¶6). The circuit court granted summary judgment in the hospital's favor, "finding that Page failed to raise a genuine issue of material fact as to BRMC's negligence." *Id.* (¶9).

¶52. This Court affirmed the circuit court's decision, first determining that Page was not entitled to a negative inference because unlike the casino in *Isle of Capri* the defendant hospital in *Page* did not discard the chair intentionally, or through gross negligence, and discarding the chair did not violate a State statute. *Id.* at 645 (¶17).

¶53. Most importantly, however, is that this Court in *Page* also found that the chair was "irrelevant" because even if Page had been able to examine the chair, it would not have prevented summary judgment in the hospital's favor. *Id.* at 645-46 (¶17). In particular, the Court found:

> [H]ad Page obtained the chair during the discovery process, it is very unlikely an examination of the chair would have conclusively proven that it was broken before his fall. Moreover, even if the chair was broken before Page sat in it, he still failed to show [the hospital] had notice of the defect or failed to inspect

23

the chair. Therefore, because Page failed to present evidence showing that [the hospital] breached its duty of reasonable care, he is unable to establish negligence, making the defectiveness of the chair and the spoliation of evidence irrelevant.

*Id.*

¶54. Similarly, for the reasons detailed above, even if Walker had the surveillance videotape, it would not have prevented summary judgment in Cellular South's favor. We therefore find no error in the circuit court's decision to deny Walker's motion for sanctions and grant summary judgment in Cellular South's favor.

### IV. Motion to Alter or Amend the Judgment

¶55. Walker asserts that the circuit court erred in denying his motion to alter or amend the judgment brought pursuant to Mississippi Rule of Civil Procedure 59(e). "[T]o succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004). We "review[] a trial court's denial of a Rule 59 motion under an abuse of discretion standard." *Id.*

¶56. We find no abuse of discretion in the circuit court's decision to deny Walker's motion to alter or amend the judgment. He presented no new evidence in his motion, nor did he cite to "an intervening change in controlling law." Rather, Walker's motion consisted of a reiteration of facts and arguments previously made before the circuit court. We do not find that this demonstrated any "manifest errors of law or fact" in the circuit court's

24

judgment—indeed, we affirm the circuit court's judgment in all respects. We find that this assignment of error is without merit.

¶57. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS AND LAWRENCE, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. C. WILSON, J., NOT PARTICIPATING.**